STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-03-2
JLH -PEN -5/28/2004

FILED & ENTERED
SUPERIOR COURT
MAY 28 2004
PENOBSCOT COUNTY

City of Brewer,
        Plaintiff

v.                                              Decision and Judgment

Michael W. Conners,                             DONALD L. GARBRECHT
        Defendant                               LAW LIBRARY

                                                JUN 4 2004

Hearing on the City of Brewer's complaint was held on December 4, 2003, and January 8, 2004. On both hearing dates, a representative of the City, the defendant Michael W. Conners and both attorneys of record were present. Following the jury-waived trial, the parties filed written argument, which the court has considered. In this action, the City seeks recovery from Conners for the expense it incurred when it caused the demolition of two buildings that were owned by Conners and that the City had condemned. *See* 17 M.R.S.A. § 2851 *et seq.* The City also seeks an award of its costs and attorneys fees.

The two buildings at issue were located at 14 DeRusha Lane and 8 Rooney Street in Brewer. In 1994 and 1995 respectively, Conners purchased them as investment properties, intending to lease them as residences. Presently, he is the sole owner of the two properties.[1] Due to the poor condition of the buildings, the City's code enforcement officer, David Russell, condemned the Rooney Street building in July 1996 and the DeRusha Lane property in January 1997, concluding at those respective times that neither was fit for human habitation but after giving Conners an opportunity to remediate the problems. With the exception of some cosmetic work (such as mowing the lawn), Conners took virtually no action to repair or correct the problems with either house, even

---

[1] Conners purchased them jointly with his then-wife. When they were divorced in 2000, the two parcels were set aside to him.

1

after the CEO condemned them. They remained placarded and unoccupied through the date of their demolition in 2002.

In late fall 2001, Russell sent a letter to Connors noting the past history of the properties and their continuing status under condemnation. Russell also spoke with Connors. Among other things, Russell advised Conners that the front door on the DeRusha Lane property was not secure. Conners told Russell that the City could board up the entrance with plywood and send him a bill. The City did the work but, as Conners testified, never charged him for it. Then, in May 2002, Russell and Conners spoke again about the properties. They now provide different accounts of that exchange. The court credits Russell's testimony that he told Conners that the city officials responsible for such matters were considering the commencement of legal or condemnation proceedings for both buildings. In June, Russell wrote Conners advising that he (Russell) would turn the issue over to the City's attorney in anticipation of a July 16 city counsel meeting if Conners did not start the demolition work himself by July 15. At trial, Conners testified that Russell told him, expressly or impliedly, that although Conners needed to correct the substantial defects in the buildings, there was no urgency because the legal proceedings would take time. The court does not find this testimony to be credible because it runs contrary to the City's more aggressive efforts to address the serious health and safety problems posed by the buildings.

By letter dated July 10, the city clerk sent a letter to Conners notifying him that on July 16, the city counsel would decide whether to hold public hearing on the condition and fate of the two buildings. The counsel in fact addressed that issue at the July 16 meeting. Conners was not present. The counsel voted to hold a public hearing on the two buildings. The hearing would be held on August 13. A formal notice of the city counsel's decision for each of the two properties was served on Conners on July 25. The notice for the Rooney Street property contained the correct date for the public hearing. However, the notice for the DeRusha Lane building provided that the hearing would be held on August 20, rather than August 13. (When the proposed orders were prepared in advance of the July 16 meeting, the drafter expected that the hearing, if ordered by the counsel, would be held on August 20. The counsel decided to schedule the public hearing for August 13. The proposed order for the DeRusha Lane building was not

changed or corrected to reflect the counsel's scheduling decision.) However, in late July, the city clerk sent letters to Conners regarding the upcoming public hearing, and those letters were served in hand on Conners. The two letters (one for each property) set out the correct hearing date (August 13). Additionally, the City published a notice of the August 13 hearing dates (with the correct date) in the Bangor Daily News.

On August 13, the public hearing on the two Conners parcels was held. Conners himself did not attend the meeting, either himself or through a representative. The evidence clearly shows that Conners' absence from the meeting was unrelated to the reference to the wrong date in the city counsel's order on the DeRusha Lane property. Conners himself testified that he did not appear at the August 13 public hearing because he thought that, irrespective of the hearing's outcome, he would still have further opportunity to make the repairs needed to save it from demolition. Even beyond this, the notice of hearing for the Rooney Street property was correct: there was no basis for any confusion about the date of that hearing. There is no evidence in this record that Conners had a greater interest in salvaging one of the properties than the other. Thus, this is not a situation where, for example, he chose not to attend the August 13 hearing and was simply awaiting an August 20 meeting because he was more interested in the DeRusha Lane house (which was subject of the purported August 20 hearing) than the Rooney Street house. In fact, he did not show up at the place and time indicated in the erroneous order. Thus, the error in the one city counsel order was immaterial and had no effect on Conner's rights, because he intended not to attend any public hearing on his properties, regardless of when any such hearing was to be held.

At the August 13 public meeting, the city counsel heard evidence presented by the CEO. On the basis of the information developed during that proceeding, the city counsel made specific findings regarding the condition of the 8 Rooney Street and 12 DeRusha Lane properties. On the basis of those findings, the counsel concluded that both properties posed health and safety hazards and were dangerous to life and property. On this basis, the counsel ordered that Conners have the opportunity to abate the condition within 31 days of the effective date of its order (August 18), and, if Conners failed to do so, the city manager was instructed to remove the nuisance. In the latter instance, the matter would be referred for collection of the resulting expenses from Conners. Conners

was served in hand with the two notices, which the City also recorded in the Penobscot County Registry of Deeds. Conners did not take any steps to remediate or remove either building. Further, he did not appeal the decision affecting either of the properties. Consequently, in October, the City entered into a contract with a local contractor for the demolition and removal of the buildings on the two parcels. Pursuant to that contract, the buildings in fact were demolished, and the material was removed from the sites. The City made demand on Conners for the costs of that work, which were $6,800 for the Rooney Street house and $16,500 for the building on DeRusha Lane. Conners did not satisfy that demand, and the City then brought this action.

In his written summation, Conners argues that he did not receive sufficient notice of the July 16 city counsel meeting and that the defective notice associated with the August 13 public hearing vitiates the City's claim. He also contends that the City has waived its right to recover because Russell led him to believe that he did not need to comply with any demand to repair or remove the buildings. Conners has not argued expressly that the two buildings were dangerous within the meaning of 17 M.R.S.A. § 2851. Nonetheless, it was an issue raised at trial, and the court addresses it here.

## A. Dangerous buildings

The City contends that Conners is bound by the counsel's determination that the two buildings were dangerous, because he elected not to appeal those orders despite his right to do so under section 2852. Conners argues that, because of insufficient notice and because of notions of waiver and estoppel, the counsel's determination was void, and so he is not barred from litigating the issue now. This, however, is a collateral attack on the effect of the counsel's August 13 adjudication. For the reasons set out below, the court concludes that those contentions are unavailing. Consequently, the counsel's determination that the conditions of the building were dangerous within the meaning of section 2851 is a final adjudication on the matter and one that bars relitigation here.

Even if that were not so, however, the independent evidence regarding the condition of the two buildings amply demonstrates that they were structurally unsafe; that they were unstable; that they were unsanitary; that they posed a fire hazard; that they were unsuitable for occupancy; that they were a hazard to health and safety because of inadequate maintenance and dilapidation; and that they were dangerous to life and

4

property. Therefore, the City has established here that it was statutorily entitled to pursue and accomplish the demolition of the buildings.

## B. Defective notice

Conners argues that the City gave him legally insufficient notice of the July 16 and August 13 city counsel meetings, thus undermining the City' right to obtain relief from him here.

First, Conners urges that he was deprived of due process because he was not given adequate notice of the July 16 city counsel meeting, where the counsel considered the CEO's request to pursue demolition of the buildings. On July 10, the city clerk mailed a letter advising Conners that the agenda for the July 16 meeting would include this issue. The clerk wrote Conners that he was "welcome to attend this meeting and comment on this item." Conners did not attend. He argues, however, that the amount of notice was too short. During his trial testimony, Conners confirmed that he received this letter. Although there is no evidence on this specific point, the court is willing to infer that Conners received the letter prior to the meeting itself. Despite this, Conners did not appear at the counsel meeting to object to the short notice, to request that the issue be rescheduled to a later date or to seek any other form of relief. *See Sawyer v. Board of Licensure in Medicine*, 2000 ME 125, ¶ 15, 754 A.2d 996, 999-1000 (respondent in agency action was not denied an opportunity to be heard when he failed to appear at the hearing). Further, here, Conners does not identify any specific form of prejudice flowing from the notice he did receive: he makes no specific argument, for example, that he was unable to marshal particular information due to the limited about of time between the date he received notice and the counsel meeting itself.

Conners acknowledges that there is no law defining the amount of time a municipality is required to provide a landowner regarding a municipal body's impending consideration of the issue at hand.[2] However, the pivotal point is that the city counsel's

---

[2] As Conners points out in his summation, section 2851(1) provides, "The notice [of the municipal hearing] shall be served on the owner. . .in the same way service of process is made in accordance with the Maine Rules of Civil Procedure." Here, Conners does no argue that the City failed to satisfy the requirements of service under M.R.Civ.P. 4. This, however, does not address the issue at hand, which relates to the timing of that service in relation to the hearing date.

consideration of the fate of the properties on July 16 was preliminary in nature. The counsel simply considered the question of whether a public hearing should be held at some later time, to allow the presentation of evidence that the counsel would *then* assess and use as a basis for its decision of whether to seek relief under section 2851. The limited nature of the July 16 meeting distinguishes this case from *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 15, 728 A.2d 1268, 1272, where the Law Court examined the adequacy of notice that preceded the hearing where the demolition decision was actually made. This raises a true question about the extent of any due process interest Conners may have had in the July 16 proceeding. *See generally Seider v. Board of Examiners of Psychologists*, 2000 ME 118, ¶ 19, 754 A.2d 986, 991 ("Due process is a flexible concept calling for such procedural protections as the particular situation demands." (Citation and internal punctuation omitted.)). If Conners had a constitutionally protected, due process interest in the July 16 hearing, then it was of a limited magnitude, thereby reducing the amount of notice that the City was required to provide him. Under all of these circumstances, the court cannot conclude that the notice provided to him prior to the July city counsel meeting improperly compromised his rights.

Conners also contends that the incorrect date on the notice of public hearing relating to the DeRusha Lane property vitiates the City's rights against him here. As is noted above, however, that error did not create any prejudice to Conners, because he had no interest or intention to attend any public hearing, regardless of the date of such a hearing. Further, Conners received a copy of the city counsel's August 13 decision affecting the two properties, and he was given that notice well prior to the deadlines for filing an appeal to the Superior Court. His election not to pursue such an appeal, where he could have challenged the legality of the City's decision regarding DeRusha Lane due to the incorrect notice, bars him from raising such an argument here. Therefore, because Conners has waived his right to challenge the City's action on the ground of the defective notice, and because any such defect was harmless under the circumstances present here, the court concludes that the City's pursuit of its statutory remedies does not violate Conners' rights to due process.[3]

---

[3] For purposes of this issue, the court assumes without deciding that the notice relating to the DeRusha Lane property in fact was flawed. The court does not address the City's

## C. Waiver/estoppel

Finally, Conners contends that the City has waived its right to seek recovery from him because the City's CEO led him to believe that he did not need to take prompt action to repair the two buildings or to remove them on his own. Conners asserted waiver as an affirmative defense in his responsive pleading. Although he did not also raise a defense of estoppel, the court finds that the articulation of the waiver defense, which in this case has the same factual basis as an estoppel argument, was sufficient to place the City on notice of the issue.

For three reasons, Conners has not demonstrated that the City was waived its claim against him or that it is estopped from securing recovery here. First, the record establishes that Russell, in his capacity as the City's CEO, had no authority to counter the city counsel's decision to demolish the two buildings (either by directing Conners to remove them or, if he failed to do so, by making its own arrangement for the demolition). "[T]he unauthorized act of a municipal officer cannot be grounds for estopping the municipality." *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 106 (Me. 1984). Thus, even if Russell had made statements to Conners that would rise to the level of a representation that the City would not follow through with any plans to secure the buildings' demolition, those statements do not estop the City from obtaining relief here.

Second, the court is satisfied that Russell did not make statements or engage in any other conduct that, as Conners contends, the City was not serious about seeking the demolition of the two buildings. According to Conners' testimony, Russell told him during a telephone call that the City was not in a rush to address the problems created by the two buildings, and Russell acceded to Conner's intention to take care of the problem in the near future. Although the City had tolerated the decrepit condition of the houses for several years, the best evidence reveals that the City had quickened its pace by 2002 and was determined to address the issue more vigorously. This is demonstrated by Russell's letter to Conners in November 2001, their meeting in May 2002 when Russell told Conners that the city counsel planned to take action, and Russell's letter to Conners

---

argument that this error was rectified by the correct date in a letter accompanying the copy of the city counsel's order and sent to Conners by the city clerk, and by publication of the announcement for the August 13 hearing in three editions of the Bangor Daily News, as arranged by the City.

7

in June 2002. The 2002 communications, which were roughly contemporaneous with the statements that Conners attributes to Russell, credibly belie the notion that Russell was content to let the matter progress slowly. Thus, the court cannot credit Conners' testimony that Russell engaged in conduct that would estop the City from pursuing its claim at bar.

Finally, even if Russell had misled Conners into thinking that he (Conners) still had the opportunity to remediate the problems himself at a pace of his choice, any reliance on Russell's statements was not reasonable. The City put Conners on notice that it was serious about the problem. Russell advised Conners in writing, as part of the June 19, 2002, letter, that he was pressing the matter by referring it to the City's attorney and that the city counsel would consider the issue at it July 16 meeting. Then, the City notified Conners that the city counsel would hold a public hearing in August to determine whether the building should be demolished. (Irrespective of any problem with the date of the hearing, the notice was clearly sufficient to advise Conners that the City was moving forward.) Finally, following the August 13 hearing, the City notified Conners of the city counsel's directive requiring Conners to abate the nuisance. In light of all of this information (which was actually known to Conners) about the City's enforcement efforts, it was plainly unreasonable for Conners to hope, based on Conners' account of an ambiguous comment made by Russell, that it would not press the issue. For any reliance to be reasonable, Conners would need to have disregarded the strong and express signals that the City intended to take prompt action against his property and then against him in this proceeding. Therefore, the City is not estopped from asserting its claim here. *See H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 925 (Me 1996) (in estoppel claim, any reliance must be reasonable).

### D. Relief

The cost to demolish the two buildings was $23,300. The City is entitled to recover that amount, in addition to expenses associated with the condemnation process. *See* 17 M.R.S.A. § 2853. This amounts to a total of $29,003.20. Additionally, the City is entitled to an award of its reasonable attorney's fees. Here, for legal work performed through January 6, 2004, those fees and expenses are $5,568.40 ($$2,874.87 + $2,829.53 - $136 (time spent on possible summary judgment motion that the City elected not to file;

the City is not seeking reimbursement for those fees)). Within 14 days of the date of this order, the City's counsel may submit a supplemental affidavit setting out fees for legal services performed subsequent to January 6, 2004. Within 10 days of that filing, Conners' attorney may file any response to that submission.

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff in the amount of $29,003.20, plus pre-judgment interest at the annual rate of 8%, plus post-judgment interest at the annual rate of 7.41%. *See* 14 M.R.S.A. §§ 1602-B, 1602-C. The plaintiff shall be awarded its reasonable attorney's fees, which shall be determined following further submissions by the parties.

Dated: May 27, 2004

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

9

BREWER CITY OF - PLAINTIFF
80 NORTH MAIN STREET
BREWER ME 04412
Attorney for: BREWER CITY OF
JOEL DEARBORN
LAW OFFICE OF JOEL DEARBORN SR PA
120 NORTH MAIN STREET
BREWER ME 04412

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2003-00002

DOCKET RECORD

vs
MICHAEL W CONNERS   - DEFENDANT
3 WESTWOOD ROAD
BANGOR ME 04401
Attorney for: MICHAEL W CONNERS
STEVEN LYMAN
LAW OFFICE OF STEVEN J. LYMAN
96 HARLOW STREET
BANGOR ME 04401-4920

Filing Document: NOTICE OF REMOVAL
Filing Date: 01/03/2003

Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS

## Docket Events:

01/06/2003 FILING DOCUMENT - NOTICE OF REMOVAL FILED ON 01/03/2003
        REMOVAL FROM DISTRICT COURT, DISTRICT THREE, DIVISION OF SOUTHERN PENOBSCOT, BANGOR,
        MAINE.  (BANDC-CV-2002-598)  (EXHIBIT A ATTACHED)  DISTRICT COURT DOCKET ENTRIES WERE
        CHECKAGAINST PLEADINGS RECEIVED.  ALL PLEADINGS EXCEPT THE SUMMONS SHOWING SERVICE WERE
        RECEIVED.  CALL IN TO DISTRICT COURT TO RETREIVE IT.

01/06/2003 Party(s):  BREWER CITY OF
        ATTORNEY - RETAINED ENTERED ON 01/03/2003
        Plaintiff's Attorney: JOEL DEARBORN

01/06/2003 Party(s):  MICHAEL W CONNERS
        ATTORNEY - RETAINED ENTERED ON 01/03/2003
        Defendant's Attorney: STEVEN LYMAN

01/06/2003 CERTIFY/NOTIFICATION - RULE 13(J) NOTICE OF REMOVAL SENT ON 01/06/2003
        MARGARET  GARDNER , CLERK II
        TO ALL ATTORNEYS OF RECORD.

01/07/2003 NOTE - OTHER CASE NOTE ENTERED ON 01/07/2003
        COPY OF SUMMONS RECEIVED FROM DISTRICT COURT TODAY.

01/09/2003 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 01/09/2003
        JEFFREY L HJELM , JUSTICE

01/09/2003 ORDER - SCHEDULING ORDER ENTERED ON 01/09/2003
        JEFFREY L HJELM , JUSTICE
        THE ENTRY WILL BE:  SCHEDULING ORDER FILED.  DISCOVERY DEADLINE IS OCTOBER 1, 2003.
        PARTIES TO SELECT ADR PROCESS AND NEUTRAL.  COPY FORWARDED TO ALL ATTORNEYS OF RECORD.

03/11/2003 Party(s):  BREWER CITY OF
        MOTION - MOTION FOR ENLARGEMENT OF TIME FILED WITH AFFIDAVIT ON 03/10/2003