MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 6
Docket:      Wal-16-133
Argued:      December 15, 2016
Decided:     January 12, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

HOLLIE A. BEAL

v.

TOWN OF STOCKTON SPRINGS

PER CURIAM

[¶1]   Hollie A. Beal appeals from a judgment of the Superior Court (Waldo County, *R. Murray*, *J.*) affirming a decision by the Town of Stockton Springs's Board of Selectman (the Board) determining that a structure owned by Beal was a dangerous building or nuisance pursuant to 17 M.R.S. § 2851 (2016).  Beal contends that (i) the Board violated her due process rights when the Board allegedly denied Beal the opportunity to be heard, to cross-examine witnesses, and to have an impartial fact-finder, and (ii) there was insufficient evidence in the record to support the Board's findings.  We affirm the judgment.

## I. CASE HISTORY

[¶2]  Beal acquired property located at 65 Sandy Point Road in Stockton Springs in 2004.  The 556-square-foot building was originally built around 1900 as a grain storage shed but was more recently used as a residence.  In June 2014, the Town's Code Enforcement Officer (CEO) made a site visit to Beal's residence after receiving a complaint about the condition of the property.  After the July 17, 2014, Board meeting, when Beal and her attorney met with the Board to discuss concerns about the habitability of her property raised by the CEO's site visit, Beal agreed to present a rehabilitation plan to the Board within thirty days.

[¶3]  About a month later, Beal notified the CEO that a general contractor had assessed her property, and she submitted a one-page rehabilitation plan.  On August 20, the CEO informed Beal that the plan was inadequate because it lacked a complete list of items needing repair and a time frame for completion.  The CEO further informed Beal that the Board anticipated that the parties would enter a consent agreement at the September 4 meeting.  Because Beal did not attend the September 4 meeting, the Board did not take any action regarding Beal's property.  The matter was discussed by two members of the Board.  One of the Board members

indicated, during the conversation, that he believed that the structure should be condemned. At the end of September, the Board set a public hearing to determine whether the structure constituted a dangerous building within the meaning of 17 M.R.S. § 2851.

[¶4] Just before the start of the November 20, 2014, hearing, Beal requested that the three members of the Board recuse themselves based upon her concern that they had already prejudged the case. The Board members expressly stated on the record that they had not already decided the issue and would base their decision on the evidence presented at the hearing. Accordingly, each member of the Board declined to recuse from participating in the hearing and subsequent decision-making.

[¶5] The Board proceeded with the public hearing and heard testimony from the CEO, Beal's general contractor, and Beal. The CEO presented photographs and testified about numerous deficiencies and hazards regarding the plumbing, chimney, roof, and structural supports. Beal's general contractor testified that, although the building needed many repairs, the only safety hazard in the building was a support issue that recently had been corrected.

[¶6] The Board asked witnesses questions that were submitted, but did not allow Beal's counsel to question any of the witnesses by either direct or cross examination. The chair invited Beal's attorney to submit written questions that the Board would then pose to the witness. The Board also allowed Beal's counsel to present a summation argument. Beal's counsel formally objected to the hearing procedure. At the conclusion of the hearing, the Board members voted unanimously that the structure was a dangerous building, and requested that the town manager and CEO draft written findings of fact to be presented at its upcoming meeting.

[¶7] During an executive session held on December 15, the Board consulted with the Town's attorney to discuss the focus of a dangerous building hearing, the process for obtaining an administrative site inspection warrant, and the Board's ability to reopen the hearing. At its next meeting, the Board voted to reopen the public hearing, "for the purpose of allowing additional testimony to be presented to ensure all areas of the definition of a dangerous building have been thoroughly explored." It scheduled the reopened hearing for January 15, 2015.

[¶8] At the January 15 hearing, the Board heard additional testimony from the CEO regarding his concerns about the structural integrity of the

building. He explained that the building has rotted sills and a chimney in very poor condition, and that his ability to give a more thorough report had been stymied by Beal's refusal to allow him "access to the interior of the structure, specifically the basement or the lower level." The Town's attorney questioned the CEO about several aspects of his testimony.

[¶9] Beal attended the reopened hearing, but, although offered the opportunity, affirmatively declined to present any further information to the Board. Beal's counsel was absent from the hearing. At the conclusion of the hearing, the Board affirmed its November 20 decision declaring the building hazardous. In addition, it continued the hearing with regard to the issue of disposition, and ordered the CEO to apply for an administrative warrant to inspect the interior of the structure.

[¶10] On April 16, 2015, after the administrative warrant had been issued and executed, the Board resumed the public hearing and heard extensive testimony from the CEO regarding the interior condition of the structure. Beal attended the hearing, presented evidence, and was provided an opportunity to question the CEO and dispute his observations. Again, Beal's counsel was absent from the proceeding. At the close of the hearing,

the Board unanimously concluded that the structure was a dangerous building.

[¶11]  In May 2015, the Board issued a written order in which it found that the following deficiencies collectively made the structure unsafe, unstable, unsanitary, and a fire hazard: rotted sills that caused a deck to collapse, a chimney with deteriorated mortar and no flue liner, a sagging roof caused by an improper foundation and cracked roof joists, floor joists that did not properly rest on a carrying beam, exposed wiring and electric wires, and unsanitary and improperly installed plumbing.  In the "disposition" portion of the order, the Board included requirements that Beal have a licensed plumber and a licensed electrician bring the building up to code, and required her to "repair and/or replace all structural members" by August 26, 2015.

[¶12]  Beal filed a complaint for review of government action in the Superior Court.  *See* M.R. Civ. P. 80B; 17 M.R.S. § 2852 (2016).  The court affirmed the decision of the Board in a written order dated March 3, 2016.  Beal timely appealed to this Court.  *See* M.R. Civ. P. 80B(n); M.R. App. P. 2(b)(3).

## II.  LEGAL ANALYSIS

A.    Standard of Review

[¶13]  Our review of administrative decision-making is deferential and limited.  *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128.  "When the Superior Court acts in an appellate capacity we review directly a local agency's decision for abuse of discretion, errors of law, and findings not supported by the evidence."  *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 13, 82 A.3d 148.  The party challenging a Board's decision bears the burden of persuasion on appeal.  *Id.*

B.    Due Process

[¶14]  Beal contends that the Board violated her due process rights when, at the November 2014 hearing, the Board allegedly denied her the opportunity to present evidence, to cross-examine witnesses, and to have an impartial fact-finder.[1]

[¶15]  The due process clauses of the Maine and federal Constitutions guarantee due process before a government entity deprives any person of a property right.  *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 13, 728 A.2d

---

[1]  Beal urges us to confine our review on appeal to the November 20, 2014, hearing because the Board did not rescind its original decision when it conducted the subsequent hearings.  We are not persuaded by this argument.  Beal appealed from the final May 2015 decision that followed three days of hearings—not from the preliminary November 2014 decision.

8

1268; *see also* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. Due process will "vary from case to case . . . to assure the basic fairness of each particular action according to its circumstances." *Kirkpatrick*, 1999 ME 73, ¶ 13, 728 A.2d 1268. We must analyze three distinct factors when assessing whether an individual's due process rights have been violated:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *In re M.P.*, 2015 ME 138, ¶ 31, 126 A.3d 718; *Hale v. Petit*, 438 A.2d 226, 231-32 (Me. 1981).

[¶16] There is no dispute that declaring Beal's property a dangerous building affects an important private property interest or that the Town has an interest in limiting use of or eliminating dangerous buildings. *See Mathews*, 424 U.S. at 335. The only issue here is whether Beal was afforded the process she was due, including "notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *Jusseaume v. Ducatt*, 2011 ME 43, ¶ 12, 15 A.3d 714.

[¶17]   Although the Board prohibited cross-examination of any witnesses at the November hearing, after consultation with the Town's attorney the Board reopened the evidence and rescinded this restriction for the remaining hearings.  In addition, even at the November hearing, Beal had an opportunity to respond to evidence presented against her, in two ways.  First, Beal could—and did—present rebuttal testimony to refute the CEO's claims.  Second, the Board allowed the submission of written questions which could then be asked by the Board and the presentation of a summation argument.

[¶18]   During the January and April hearings, when Beal could have directly questioned witnesses, she declined to do so, and Beal has not explained how she was prejudiced or what additional information she might have developed from cross-examining the CEO at the November hearing.  *See Hale*, 438 A.2d at 231-32 (lack of opportunity for cross-examination not deprivation of due process when applicant had opportunity to support its proposal, criticize competing application, and comment on criticism of its proposal).  On this record, we see no reason to disturb forty years of precedent that does not require that boards provide the opportunity for cross-examination at every local administrative hearing.  *See In re Me. Clean*

*Fuels, Inc.*, 310 A.2d 736, 745-48 (Me. 1973) (the due process right to respond to opposing evidence does not include cross-examination of opposing witnesses in an administrative hearing).

[¶19] Persons who come before an administrative board are entitled to a fair and unbiased hearing. *Fitanides v. City of Saco*, 2015 ME 32, ¶ 22, 113 A.3d 1088; *Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 902 (Me. 1993). An administrative hearing officer "enjoys a presumption of honesty and integrity, which is only rebutted by a showing of some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Mr. & Mrs. V. v. York Sch. Dist.*, 434 F. Supp. 2d 5, 12-13 (D. Me. 2006).

[¶20] Because Beal did not move for a trial of the facts, we must confine our examination of her bias claim to the existing record. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237 (stating that a party may move for a trial of the facts pursuant to M.R. Civ. P. 80B(d) to supplement the record on issues such as bias, to the extent necessary to the appeal).

[¶21] To support her claim of bias, Beal relies on a letter sent to her by the CEO on August 20, 2014, in which he states that "[he] and the Selectboard agreed that a complete list of items that need remediation . . . shall be

required" prior to the signing of the consent agreement between Beal and the Town on September 4, 2014. In addition, Beal relies on statements made at the September 4 public meeting by members of the Board who were responding to a citizen's question about Beal's property. All the statements were made prior to the initiation of the dangerous building proceedings.

[¶22] The statement made by the CEO, who is not a member of the Board, does not demonstrate denial of due process. *See Gorham*, 625 A.2d at 902. The statements made by the Board members must be considered in context. Although one member of the Board stated that he thought that the house "should be condemned," he and the other Board member also stated several times that there is a process that must be followed, that the property owner has rights, and that the Board has an obligation to do things correctly.

[¶23] At the time that those statements were made, the Board—acting in its executive/administrative capacity—was anticipating an informal resolution of the matter. It was not until several weeks later that the Board decided to proceed with a formal hearing. When Beal presented her motion for recusal, the Board members—now acting in an adjudicatory capacity— affirmatively stated on the record that they had not prejudged the case and that their decision would be based upon the testimony and evidence

presented at the hearings. The Board members listened and asked questions over the course of several months before rendering their final decision. *See Lane Constr. Corp. v. Town of Wash.*, 2008 ME 45, ¶ 30, 942 A.2d 1202; *Gorham*, 625 A.2d at 902-03. Beal has not rebutted the presumption that the Board members acted with honesty and integrity when they ceased informal negotiations and instead conducted the formal hearing.

[¶24] On her appeal, Beal has not demonstrated that she was denied due process or that she was subjected to a decision by a biased decision-maker.

C.    Substantial Evidence

[¶25] Beal contends that the Board's decision was not supported by substantial evidence in the record. Beal argues that the building's deficiencies do not meet the statutory definition of dangerous building, and the Town failed to meet its burden.

[¶26] "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Osprey Family Trust v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114. When reviewing administrative findings of fact, we "examine the entire record to determine whether, on the basis of all the testimony and exhibits before it, the

[Board] could fairly and reasonably find the facts as it did." *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d 1128. We must affirm findings of fact if they are supported by any competent evidence in the record "even if the record contains inconsistent evidence or evidence contrary to the result reached by the [Board]." *Id.* ¶¶ 13-14.

[¶27] Here, the CEO provided detailed testimony about the interior and exterior conditions of the house—including major structural deficiencies, plumbing issues, and fire hazards—and presented photographs to support his observations. Although Beal provided some testimony to the contrary, the Board was not obligated to accept it. Therefore, there was substantial evidence on the record to support the Board's findings of fact and ultimate determination that Beal's property constituted a dangerous building within the meaning of 17 M.R.S. § 2851.

The entry is:

Judgment affirmed.

Aaron Fethke, Esq. (orally), Law Office of Aaron Fethke, Searsport, for appellant Hollie A. Beal

Erik M. Stumpfel, Esq. (orally), Rudman Winchell, Bangor, for appellee Town of Stockton Springs

Waldo County Superior Court docket number AP-2015-5
FOR CLERK REFERENCE ONLY