STATE OF MAINE
Penobscot, ss

SUPERIOR COURT
Docket No. BANSC AP-19-18

Elizabeth Mills
         Plaintiff,

v.

Town of Bar Harbor and BHAPTS, LLC
         Defendants.

**ORDER ON PLAINTIFF'S 80B
COMPLAINT and Motion to Stay**

Before the court is plaintiff Elizabeth Mills' Rule 80B complaint requesting review of governmental action. Ms. Mills challenges the Town of Bar Harbor Board of Appeals' (Board) decision dismissing her appeal to the Board, which challenged the Town Planning Board's decision granting a building permit to defendant BHAPTS, LLC. The Town of Bar Harbor has taken no position on the legal issues raised in this 80B action and is participating in this matter only to monitor proceedings.[1] For the following reasons, the Court vacates the Board's decision and remands the case back to the Board for further proceedings consistent with this opinion.

I.     **Background**

BHAPTS applied to the Bar Harbor Planning Board for permission to make alterations to a rental property located at 25 West Street Extension, Bar Harbor. BHAPTS seeks to turn the property into an eighteen-unit housing project for its seasonal workforce. The Town Planning Board held hearings on this application on December 5, 2018 and January 16, 2019. The Planning Board approved the application and then issued a written decision on February 6, 2019. Ms. Mills owns a historic property adjacent to the proposed housing project and opposes the Planning Board's

---

[1] As stated in an October 11, 2019 letter to the court by the Town's attorney, Edmund J. Bearor, the Town of Bar Harbor "takes no position with regard to this pending appeal" and is "not participating in this appeal except to monitor." According to Attorney Bearor, the Town's position should be understood as identical to the positions of its appointed Boards.

1

decision to allow the housing project. Ms. Mills appealed the Planning Board's decision to the Bar Harbor Board of Appeals (Board) on March 8, 2019 and submitted copies of her written statement and a portion of the record of the Planning Board proceedings on March 19, 2019. The Board then held a hearing on her appeal on April 9, 2019.

The Town's land use ordinance sets forth procedural rules for the Town's Board of Appeals, including a requirement that appellants provide certain materials to the Board. The procedural rules at issue in this case are found in Bar Harbor, Me. Land Use Ordinance §§ 125-103B[2], 125-103C(1)[3], and § 125-103D(1)(b)(1)-(3)[4] (June 13, 2019).

---

[2] Bar Harbor, Me. Land Use Ordinance § 125-103B (June 13, 2019) provides the following:
> Application. An application for an administrative appeal shall include the following and must be filed with the Planning Department within 30 days of the decision or action being appealed:
> 1. A completed application for appellate or de novo review on a form prescribed by the Planning Department;
> 2. An administrative fee and a public notice fee, which fees shall, from time to time, be set by the Bar Harbor Town Council.
> 3. In the case of an appeal to be heard by appellate review, a notice of the applicable parts of the record to be transcribed at the expense of the appellant;

[3] Bar Harbor, Me. Land Use Ordinance § 125-103C(1) (June 13, 2019) states:
> Appellate review hearings.
> a) At least 20 days prior to the Board of Appeals meeting at which an appellant is to be heard in an appellate review hearing, the appellant shall file with the Planning Department 12 copies of the parts of the record on appeal upon which the appellant plans to rely, along with 12 copies of a written statement setting forth the appellant's position as to the basis for the appeal and the relief requested.
> b) No later than seven days prior to the public hearing on the appeal, any other person wishing to present either parts of the record on appeal not submitted by the appellant or a written statement setting forth that person's position on the appeal may file 12 copies of such materials with the Planning Department.

[4] Bar Harbor, Me. Land Use Ordinance §125-103D(1) (June 13, 2019) states:
> Hearing.
> 1. Appellate review hearings.
>    a. . . .
>    b. Appellate review hearings shall be limited to review of the record on appeal. The appellant and other parties may submit written argument and use illustrative aids that highlight or otherwise help the Board understand the record on appeal but may not introduce any evidence that was not presented to the decision-maker below. The Record on appeal shall consist of:
>       1. Transcripts of the hearings held below;
>       2. Exhibits and other documentary evidence submitted to or considered by the decision-maker below; and

The April 9, 2019 hearing mainly concerned whether Ms. Mills' appeal application met the procedural requirements set forth in § 125-103 of the Town's land use ordinance. BHAPTS argued that Ms. Mills' appeal application failed to meet these procedural requirements because: (1) she failed to provide a timely filing fee; (2) she did not provide complete transcripts of the Planning Board proceedings and the transcripts she did provide were incomprehensible; and (3) she did not provide the Board with all the documents relied on by the Planning Board.

After deliberations, the Board unanimously held that Ms. Mills did not submit sufficient documents for the Board to review her appeal and dismissed the appeal application. (Pl.'s Br. Ex. C, at 32-38.) During the Board's deliberation, Board members voiced concerns that the transcripts Ms. Mills submitted had transcription errors and that because Ms. Mills did not submit a complete transcript of the Planning Board's proceedings, her transcripts were difficult to follow and did not provide adequate information about what the Planning Board based its decision upon. (Pl.'s Br. Ex. C, at 32-34.) Board members also indicated that Ms. Mills appeal application was incomplete because it was missing the final site plan approved by the Planning Board as well as other materials from the Planning Board proceedings. (Pl.'s Br. Ex. C, at 34-38). Some Board members were further concerned that Ms. Mills may not have submitted 12 copies of her written statement and the record she intended to rely upon in her appeal; however, the Board never determined explicitly or implicitly whether or not Ms. Mills had submitted the necessary number of copies.[5]

---

3. The decision being appealed, factual findings made by the decision-maker below and any other rulings or decisions made by the decision-maker below that are relevant to the issues on appeal.

[5] The hearing transcript indicates the Board was unsure whether Ms. Mills' attorney had submitted 12 copies of her written statement and the parts of the record she intended to rely upon. When the Board's Chair, Ms. Dohmen, indicated that the Board may not have received 12 copies, Ms. Mills' attorney stated that he had provided 12 copies to the Board, Pl.'s Br. Ex. C, at 15-16. Board Chair Dohmen then asked the Town's Planning Director, Ms. Chamberlain, whether 12 copies were submitted and she stated she was unsure whether there were 10 or 12 copies. (Pl.'s Br. Ex. C, at 16.) ("I'm not sure if there were ten or twelve, but there were, I believe, six bound like copies like this [indicates], and then there was a whole bunch of copies not in binders.") Ms. Mills' attorney then stated again that he had submitted twelve copies. (Pl.'s Br. Ex. C, at 16.) The Board's attorney later advised the Board that they needed to decide how many copies of the record were filed, (Pl.'s Br. Ex. C, at 27, 34). However, the record indicates the Board did not make a finding on whether Ms. Mills' had submitted the required 12 copies. Based on the record provided, the court must

The Board issued a written decision on April 12, 2019 making the following findings:

"Based on the evidence in the administrative record, and after conducting their review, the Board of Appeals finds, on procedural matters:
1. The appellant fee was not paid within 30 days of the decision of the Planning Board on February 6, 2019
2. Appeal application is incomplete.
3. Meaningful portions of the record are missing such as the Planning Board-approved site plan and complete transcripts of the hearings.
4. The transcripts provided are incoherent and deficient.
5. The failure of the appellant to provide a meaningful record would not allow the board to review fairly the actions of the Planning Board.
6. Dismissal of the appeal is appropriate based on 125-103 B, C, and D."

The Board determined: (1) the plaintiff's failure to pay the filing fee was waived, as the appropriate Town officials apparently did not know the amount to be charged when Ms. Mills' attorney attempted to pay; but that (2) the submitted application was incomplete as it did not meet the requirements of § 125-103 of the Town's land use ordinance. The Board then concluded that "on a procedural matter" the appeal should be dismissed. On May 10, 2019, Ms. Mills filed a complaint pursuant to M. R. Civ. P. 80B, challenging the Board's determination.

Ms. Mills argues: (1) that the Board of Appeals erred by misinterpreting the procedural rules in § 125-103 and applying that misinterpretation of the law to her appeal application; (2) that under the Town's land use ordinance, the Board lacks the power to dismiss an appeal on procedural grounds; (3) that she met the procedural requirements in § 125-103; and (4) the Board should have decided her appeal on the merits.

I.      Standard of Review

conclude that the Board did not make a finding regarding the number of copies that Ms. Mills' submitted to the Board. *Appletree Cottage, LLC v. Town of Cape Elizabeth*, 2017 ME 177, ¶ 9, 169. A3d 396 (when reviewing governmental action pursuant to M. R. Civ. P. 80B, the court will neither embark on an independent and original inquiry, nor review the matter by implying the findings and grounds for the decision from the available record;) *see also Fissmer v. Town of Cape Elizabeth*, 2017 ME 195, ¶ 17, 170 A.3d 797.

When the Superior Court reviews a municipal board of appeals decision pursuant to 80B it directly reviews the record developed before the board of appeals for abuse of discretion, errors of law, and findings not supported by substantial evidence. *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶¶ 9-10, 153 A.3d 113; *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 13, 82 A.3d 148; M. R. Civ. P. 80B. Substantial evidence exists if there is any competent evidence in the record upon which a reasonable mind would rely as sufficient support for a conclusion. *21 Seabran*, 2017 ME 3, ¶ 10, 153 A.3d 113; *Osprey Family Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114. The fact that the record before the local agency is inconsistent or could support a different outcome does not render the decision wrong. *Duffy*, 2013 ME 105, ¶ 22, 82 A.3d 148. However, the court will neither embark on an independent and original inquiry, nor review the matter by implying the findings and grounds for the decision from the available record. *Appletree Cottage, LLC v. Town of Cape Elizabeth*, 2017 ME 177, ¶ 9, 169. A3d 396; *Fissmer v. Town of Cape Elizabeth*, 2017 ME 195, ¶ 17, 170 A.3d 797 (court will not imply findings or create an analytical construct to attribute to a municipal agency's decision, because that judicial intervention would prevent the court from properly determining whether the municipal action is supported by the evidence and invite judicial usurpation of administrative functions.)

The interpretation of a local ordinance is a question of law and is reviewed de novo. *Duffy*, 2013 ME 105, ¶ 13, 82 A.3d 148. The party seeking to overturn the municipal agency's decision bears the burden of persuasion to demonstrate error. *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768; *Duffy*, 2013 ME 105, ¶ 13, 82 A.3d 148.

II.     Analysis

1. **Procedural Requirements for Appeal Applications to the Bar Harbor Board of Appeals**

Ms. Mills argues that she was only required to meet the requirements of § 125-103B and § 125-103C, i.e. she was required to submit: (1) a completed application for appeal on the Town planning department's form; (2) an administrative fee; (3) a notice of the applicable parts of the record to be transcribed at her expense; (4) 12 copies of the parts of the record on appeal upon which she planned to rely; and (5) 12 copies of a written statement setting forth the basis of her appeal and the relief she requested. Ms. Mills asserts that while § 125-103D(1)(b) establishes the scope of the permissible record on appeal, it does not require applicants to provide all of the documents described in the subsection.

BHAPTS argues that § 125-103D(1)(b) requires appeal applicants to provide all of the documents described in the subsection, meaning: (1) all transcripts of the hearings held below; (2) all exhibits and documentary evidence submitted to or considered by the decision-maker below; and (3) the decision being appealed, and any other rulings or decisions made below that are relevant to the issues on appeal. According to BHAPTS, § 125-103D(1)(b) creates a floor that obligates applicants to provide the Board with a complete record of the proceedings below, not just the portions of the record upon which they intend to rely upon in their argument to the Board. BHAPTS contends that § 125-103B and § 125-103C create additional requirements on top of § 125-103D(1)(b).

Interpretation of a local ordinance is a question of law and is reviewed de novo. *21 Seabran*, 2017 ME 3, ¶ 12, 153 A.3d 113; *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The court looks first to the plain meaning of the ordinance's language, and construes its terms reasonably in light of the purposes and objectives of the ordinance and its general structure as a whole. *Fissmer*, 2017 ME 195, ¶ 15, 170 A.3d 797; *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27. If the meaning of the ordinance is clear, the court will look no further than its plain meaning. *21 Seabran*, 2017 ME 3, ¶ 12, 153 A.3d 113; *Rudolph v. Golick*, 2010 ME 106, ¶ 9, 8 A.3d 684. In reviewing the local agency's application of an ordinance, the court accords substantial deference to the agency's

6

characterizations and fact-findings as to what meets the ordinance's standards. *Fissmer*, 2017 ME 195, ¶ 13, 170 A.3d 797; *Bryant*, 2017 ME 234, ¶ 12, 176 A.3d 176. Ms. Mills bears the burden of persuasion on appeal because she seeks to overturn the Board's decision. *21 Seabran*, 2017 ME 3, ¶ 10, 153 A.3d 113.

Looking to the plain language of § 125-103B, C, and D in light of the general structure of the whole ordinance, the Court concludes that a party appealing a Town of Bar Harbor Planning Board decision to the Bar Harbor Board of Appeals must, subject to the ordinance's timing requirements, submit the following items to the Board of Appeals:

1. A completed application for appeal on the Town planning department's form;
2. An administrative fee;
3. A notice of the applicable parts of the record to be transcribed at the party's expense;
4. 12 copies of a written statement setting forth the basis of her appeal and the relief she requests; and
5. 12 copies of the parts of the record on appeal upon which she plans to rely.

When read as a whole, it is plain that § 125-103 of the ordinance was intended to create a method where the record on appeal is developed by relying on an adversarial process. Under § 125-103, the appellant and all of the interested parties are called on to submit what portions of the record they believe are pertinent to the appeal. This is shown by the parallel language in § 125-103C(1)(a) and (b). § 125-103C(1)(a) is entitled "submissions generally" and mandates the appellant (i.e. the ordinance states, "appellant shall file . . .") to provide 12 copies of the record on appeal upon which the appellant plans to rely along with 12 copies of the appellant's written argument and request for relief. This language is immediately followed by a provision allowing any other interested party to present their own written statement and parts of the record on appeal that were not submitted by the applicant. In this scheme, both the appellant and any interested parties are asked to provide the Board with the parts of the record they intend to rely upon but, contrary to BHAPTS' contention, no party is required to provide a complete record.

§ 125-103D, entitled "hearing," then provides a series of rules governing the Board of Appeal's administration of appellate hearings. § 125-103D(1)(b) opens with the sentence, "appellate review hearings shall be limited to review of the record on appeal." The subsection then lays out what may constitute the record on appeal, i.e. transcripts of the hearings below, etc. Contrary to what BHAPTS suggests, this subsection does not require the appellant or any other party to supply a complete and comprehensive record of the proceedings below. The subsection contains no language actually directing the appellant to provide these items and plainly does not require the appellant to provide a complete record of all transcripts of hearings in the proceedings below.

Unlike § 125-103C(1), § 125-103D(1)(a) does not use language such as the 'appellant shall' or 'appellant must.' § 125-103D is mainly directed at establishing the range of materials the BOA could consider on appeal rather than what materials the appellant or other party must submit as part of the appeal process. The language and structure of the Town's ordinance demonstrates § 125-103D(1)(a) was intended to demarcate the limits of the record on appeal that the Board of Appeals could consider, not act as a mandate requiring an appellant to provide certain materials in his or her application for appeal.

§ 125-103B then sets some additional procedural requirements for appellants regarding applications for appeal. The subsection requires appellants to provide a filing fee, a completed application form from the Town's planning department, and a notice of the applicable parts of the record that the appellant will pay to transcribe. None of this language indicates the Town of Bar Harbor intended to require appellants to provide the complete and exhaustive record as suggested by BHAPTS.

### 2. Plaintiff's Request for a Stay

On August 8, 2019 the Bar Harbor Planning Department issued a building permit to BHAPTS to construct three 50 by 32 feet concrete foundations at 25 West Street Extension, the property at issue. In late September, the plaintiff observed circumstances, such as removal of trees

on the BHAPTS property, that suggested construction was commencing on the foundations for the BHAPTS housing project. On October 3, 2019, Ms. Mills filed a motion for a stay pending appeal pursuant to Rule 80B(b), requesting that the Court enjoin any further construction activities by BHAPTS pending resolution of the appeal. Ms. Mills seeks to maintain the status quo until her challenge to the Planning Board's decision is finally resolved. October 24, 2019, BHAPTS, LLC filed an objection. On November 7, 2019, Ms. Mills filed her reply.

M.R. Civ. P. 80B(b) provides that:

> Except as otherwise provided by statute, the filing of the complaint does not stay any action of which review is sought, but *the court may order a stay upon such terms as it deems proper.*

*Id.* (emphasis added). As interpreted by the Law Court, Rule 80B's purpose is to provide the public with a "mechanism to test a government decision but, by imposing time limits to appeal and not automatically staying the action being reviewed, it recognizes the countervailing policy that the administration of government should not be unnecessarily impeded. A broad reading of the non-stay provision in the rule best reconciles these two policies by not holding government hostage by private parties *unless there is some showing made to the court that a stay is proper.*" *Cobbossee Dev. Grp. v. Winthrop,* 585 A.2d 190, 194 (Me. 1991) (emphasis added).

Both parties framed their arguments in terms that suggest this Court would utilize the *Ingraham* standard for obtaining a preliminary injunction to inform its consideration of Ms. Mills' motion for a stay under Rule 80B(b). *Ingraham v. Univ. of Maine at Orono,* 441 A.2d 691 (Me. 1982) Nothing in the body of Rule 80B(b) nor in the Law Court's interpretation of it, suggests that the *Ingraham* standard controls motions for a stay under Rule 80B(b). However, this Court, like the Court in *Pike Indus. v. City of Westbrook,* BCD-WB-Ap-09-31, (Bus. & Consumer Ct. Nov. 17, 2009, Humphrey, C.J.) looks to *Ingraham* for guidance in its consideration of Ms. Mills' motion.

Under *Ingraham,* the Court must find that four criteria have been satisfied before granting a preliminary or permanent injunction:

1) the plaintiff will suffer irreparable injury if the injunction is not granted. An "irreparable injury" is an "injury for which there is no adequate remedy at law." *Bangor Historic Track,* 2003 ME LEXIS 140, ¶ 9, 837 A.2d 137;
2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant;
3) plaintiff has demonstrated a likelihood of success on the merits (at least a substantial possibility); and
4) the public interest will not be adversely affected by granting the injunction.

*Ingraham,* 441 A.2d at 693; *Bangor Historic Track, Inc.,* 2003 ME 140, ¶ 9, 837 A.2d 137. A remedy at law is adequate, when it is "as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Throumoulos v. Bernier,* 61 A.2d 681, 683 (1948).

In connection with her request for a stay, Ms. Mills filed an affidavit which alleges that if BHAPTS begins construction on the housing project as her appeal is pending she would suffer "significant harm" as an abutting property owner. (Mills Aff. ¶ 3.) In September 2019, a narrow tree line on BHAPTS property created a buffer between the back line of Ms. Mills land and BHAPTS' existing housing structure. Ms. Mills alleges that BHAPTS construction plan would eliminate this tree line and create multiple three-story apartment structures 10 feet from her property line. (Mills Aff. ¶ 4.) She contends that destroying this tree line will forever change the quiet enjoyment of her historic home. (Mills Aff. ¶ 11.) She states that these trees provide a visual, light, and noise barrier between her property and BHAPTS housing units and that once these trees are removed and BHAPTS finishes its new worker housing project, she will suffer harm from increased light and noise disturbances. (Mills Aff. ¶ 9.) In September 2019, BHAPTS removed a significant portion of these trees in preparation for construction on its housing project. (Salvatore Aff. ¶ 24.); (Salvatore Aff. Ex. F); (Pl.'s Mot. to Stay, Ex. A, B, C.)

She further alleges that since BHAPTS took control of the property, noise disturbances, trespassing, and littering have increased. (Mills Aff. ¶ 8.) She states that should BHAPTS complete the housing structure and move in more workers, she would suffer from increased trespassing and littering on her property. (Mills Aff. ¶¶ 9, 11.) However, she is not certain that BHAPTS' tenants

10

are the actual source of her current issue with littering and trespassing. (Mills Aff. ¶ 8.) She also contends that if BHAPTS completes the housing project, she "will not be able to change the pattern of noise, trespass, late-night disturbances and light pollution that is already a problem with the worker housing complex." (Mills Aff. ¶ 11.)

After considering the record and the parties' arguments on this issue, the Court grants Ms. Mills' request to stay further construction activities by BHAPTS. The Court finds as follows:

1) <u>The plaintiff will suffer irreparable injury if the injunction is not granted.</u>

Currently there are 4 apartment buildings on BHAPTS property, these buildings contain 16 apartments and are permitted to house 80 people (5 people in each of the 16 "small" apartments). These 4 buildings are located primarily along the North Woodbury Road and West Street Extension. The current 4 buildings have 4 apartments each. Under the new plan, there would be 7 apartment buildings on BHAPTS' property, and these buildings would contain 18 apartments and would be permitted to house 90 people (5 people in each of the 18 "large" apartments, some of such 18 apartments having 4 separate bedrooms with private bathrooms). Two of the new buildings would sit 10 feet from Ms. Mills' property line. BHAPTS has already removed a significant portion of the trees on its land that served as a buffer between Mills land and BHAPTS' existing apartment buildings. The third new building would sit directly in front of one of the new buildings that would sit proximate to Ms. Mills' property line.

There is no doubt that the construction of 3 new multi-story residential buildings along Ms. Mills' property line along with the destruction of the trees would increase noise and light coming onto Ms. Mills' property from the BHAPTS property and would interfere with her quiet enjoyment of her property. Whether the as yet unknown temporary seasonal workers would trespass and litter on Ms. Mills

11

property is unknown, but there is evidence that noise, trespassing, and littering of liquor bottles and hypodermic needles on Ms. Mills' property increased after BHAPTS acquired the property and converted it into temporary worker housing.

The Court is satisfied that continued construction before the resolution of the appeal will impact Ms. Mills in a way that may not be remedied through an award of money damages. There is no adequate remedy at law. The record indicates that should BHAPTS finish construction of its apartment buildings and house more workers there, the alleged repeated nuisances, trespasses, and littering that Ms. Mills has suffered may increase. If Ms. Mills were to later bring tort actions for trespass and nuisance and succeed, her alleged harms would not be adequately remedied by an award of money damages alone.[6] Moreover, given the nature of the housing, each tourist season may well bring different tenants to the buildings.

Finally, the Court is not confident that The Town of Bar Harbor would require destruction of the new buildings once constructed, even if it were determined that the LUO was violated. The Planning Board ignored its attorney's advice in approving this matter, and this leads the Court to question whether the Town would order the removal of the buildings.[7]

2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant.

---

[6] "Irreparable injury can be demonstrated where the plaintiff is subject to repeated trespasses, to a continuing nuisance or where he faces the prospect of a multiplicity of law suits in order to obtain relief." *Plourde v. Valley Sno-Riders*, No. CARSC-CV-02-007, 2002 Me. Super. LEXIS 41, at *6 (March 18, 2002); *Wilson v. Harrisburg et al.* 107 Me. 2017, 218, 77 A. 787 (1910).

[7] The Town's land use ordinance states that if the Board of Appeals finds that the Planning Board's decision is contrary to the land use ordinance "[i]t may reverse the decision, subject to such terms and conditions it considers advisable to protect the public's health, safety, and general welfare", or vacate the decision and remand the matter to the Planning Board. Bar Harbor, Me. Land Use Ordinance §125-103(D)(1)(l) (June 13, 2019). Based on this language, it is unclear whether the Board of Appeals has the authority under the ordinance to order BHAPTS to remove the buildings should Ms. Mills succeed at the Board of Appeals. If this is true, then Ms. Mills would need to bring subsequent proceedings against BHAPTS in the courts for further relief. Given the court's finding that Ms. Mills is likely to succeed in overturning the Planning Board's decision, this outcome seems grossly inefficient.

The project in question will house an additional 10 seasonal workers. While BHAPTS might have to find an alternative location to house these 10 workers for the 2020 tourist season, the Court finds this injury does not outweigh the potential injury to the Plaintiff. BHAPTS will not be in any worse position than it has been in for the preceding tourist seasons.

3) Plaintiff has demonstrated a substantial possibility of success of the merits.

This Court is remanding this matter to the Bar Harbor Board of Appeals for action consistent with the Court's instruction on what materials a party must submit to the Board of Appeals to pursue an appeal of a decision of the Bar Harbor Planning Board (see page 7-8 of this decision). Whether submitted by Ms. Mills or BHAPTS, it appears that the Board of Appeals has the materials necessary to consider the merits of Ms. Mills' arguments. *See* (Pl.'s Br. Ex. C, at 7, 20) (indicating that BHAPTS submitted supplemental records to the Board of Appeals and is confident the Board has a sufficient record to adjudicate the merits); (Def.'s Br. 7, 8) (indicating that BHAPTS provided records to the Board of Appeals to supplement the record provided by Ms. Mills).

There is a substantial possibility that Ms. Mills will succeed on the merits before the Board of Appeals on one or more of the following issues:

a. The Planning Board's decision that the four non-conforming structures and non-conforming use could be expanded and enlarged for temporary worker housing in seven buildings, including construction of three new buildings and reconfiguration of the existing four structures;

b. The Planning Board's decision that the "base development density" was 9 units, not 8;

13

c. The Planning Board's decision that the maximum density was 18 units, not 16;

d. The Planning Board's decision that only 2 of the 18 units needed to be "affordable housing," as defined by the LUO; and potentially other issues.

4) the public interest will not be adversely affected by granting the stay.

Appropriate enforcement of the LUO is in the public interest. Additional lodging for the 2020 tourist season for 10 workers will not adversely affect the public interest. BHAPTS has indicated that it will find housing for these 10 people elsewhere, as it apparently has done in the past. While these 10 people may be important to BHAPTS business interests, the public interest will not be adversely affected by granting the stay.

The Court is not satisfied that any security should be provided by Ms. Mills in connection with the granting of this stay. First, the court is not convinced that Rule 80B provides this mechanism to the Defendant, and even if it did, that it would be appropriate in this case. Moreover, the Court is not at all persuaded by the Defendant's calculation of the estimated "project delay losses."

The Motion to Stay is granted.

## III. Conclusion

Upon consideration of the record and the parties' arguments, the court concludes that the Bar Harbor Board of Appeals misinterpreted and misapplied the procedural rules in Bar Harbor, Me. Land Use Ordinance § 125-103, which govern appellate review applications to the Board. Looking to the plain-meaning, structure, and purpose of § 125-103, the court concludes that the ordinance required Ms. Mills, subject to the ordinance's timing requirements, to submit the

14

following materials as part of her appeal application: (1) a completed application for appeal on the Town planning department's form; (2) an administrative fee (which has been waived); (3) a notice of the applicable parts of the record to be transcribed at the party's expense; (4) 12 copies of a written statement setting forth the basis of her appeal and the relief she requests; and (5) 12 copies of the parts of the record on appeal upon which she plans to rely. The record demonstrates that the Board did not assess Ms. Mills' application according to these requirements; this mistake constitutes an error of law and therefore, the court vacates the Board's decision and remands the matter back to the Board for further proceedings consistent with this opinion. 5 M.R.S. § 11007.

Ms. Mills' Motion for a Stay is granted.

The entry is as follows:

1. The Town of Bar Harbor Board of Appeals decision is vacated and the matter is remanded to the Board of Appeals for further proceedings consistent with this opinion.
2. Plaintiff's request for a stay is granted.

The Clerk is directed to incorporate this order on the docket by reference.

Dated: 11/27/19

Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-2-19

15

STATE OF MAINE
Penobscot, ss

SUPERIOR COURT
Docket No. BANSC AP-19-18

Elizabeth Mills
        Plaintiff,

v.

**ORDER**

Town of Bar Harbor and BHAPTS, LLC
        Defendants.

Plaintiff's request to file a reply memorandum in support of her motion for a stay pending appeal of 10 pages is granted.

_____11/27/19_____
Date      *nunc pro tunc*

_____
Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-2-19

STATE OF MAINE
Penobscot, ss

SUPERIOR COURT
Docket No. BANSC AP-19-18

Elizabeth Mills
          Plaintiff,

v.

**ORDER**

Town of Bar Harbor and BHAPTS, LLC
          Defendants.

Plaintiff's request for a non-testimonial hearing on her motion for a stay pending appeal is denied.

_____11/27/19_____
Date

_____
Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-2-19