STATE OF MAINE
SOMERSET, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2023-005

XINXIU "TINA" HOGAN,
          Plaintiff
     v.

KENNEBEC VALLEY
COMMUNITY COLLEGE,
          Defendant

**DECISION AND ORDER**

## INTRODUCTION

This is an appeal pursuant to M.R. Civ. P. 80B brought by Xinxiu "Tina" Hogan (Plaintiff) from a decision of a Disciplinary Committee of the Kennebec Valley Community College (KVCC or Defendant) dismissing her from the college's respiratory therapy program on the basis that her conduct violated the Student Code of Conduct by threatening or endangering the health or safety of respiratory therapy patients during a clinical practicum course in 2021 and 2022.

The Plaintiff contends that KVCC and its Disciplinary Committee committed errors of law and were arbitrary and capricious in treating her conduct as a disciplinary matter under the Student Code of Conduct, rather than as an academic issue under the respiratory therapy program handbook.

For the reasons discussed below, the court denies the appeal and affirms the decision of the Disciplinary Committee.

## FACTUAL BACKGROUND

Based on the Administrative Record (A.R.), the factual background of this case may be summarized as follows:

The Plaintiff was a student in the respiratory therapy program at KVCC from the spring of 2017 to the spring of 2022. In the fall of 2021, she was participating in a clinical practice course, during which she performed clinical work at a variety of local hospitals, while being supervised by employees of the clinical site. In November 2021, KVCC faculty began receiving email communications from clinical site supervisors that raised concerns about the Plaintiff's clinical performance. The first of these came on November 2, 2021, from Reddington Fairview Hospital in Skowhegan, in which the Director of Respiratory Care "wanted to share some concerns with [the Plaintiff's] performance." (A.R. at 33.)

On February 28, 2022, a respiratory therapist at Franklin Memorial Hospital emailed the Director of Clinical Education at KVCC stating that the Plaintiff "was really struggling with her skills in the clinical setting." (A.R. at 41.) The therapist wanted to talk more to the Director of Clinical Education because she had "some big concerns as [Plaintiff] is supposed to be graduating soon." *Id.* The Director did, in fact, call the therapist at Franklin Memorial and was told that the Plaintiff's clinical skills were concerning to her for a number of reasons, including that the Plaintiff was "listening for breath sounds in incorrect places." (A.R. at 73.) The therapist also disclosed that

2

the Plaintiff was not pleased with her evaluation and urged the therapist to fill out a new one. (A.R. at 41, 73.)

On March 17, 2022, a respiratory care supervisor at MaineGeneral emailed KVCC's Director of the Respiratory Therapy Program that the hospital "had many issues with" the Plaintiff while at its clinical site. (A.R. at 44.) The supervisor reported that the Plaintiff was "unsafe with patients and very confrontational with staff." *Id.* KVCC's Director of Clinical Education happened to be at MaineGeneral that day and observed first-hand that the Plaintiff employed "unsafe needle practices," including "incorrect angle of needle in skin, not recognizing that needle had withdrawn from skin and attempting to re-stick patient with the same needle, and not recognizing when to appropriately cap the needle." (A.R. at 73.) It was also reported that the Plaintiff became argumentative with staff at MaineGeneral over her grade and eventually had to be asked to leave MaineGeneral. (A.R. at 44.) The supervisor expressed the opinion that "[c]linically, I do not think [the Plaintiff] is ready to do any patient care on her own." (A.R. at 44.)

On March 24, 2022, a meeting was held with the Plaintiff and KVCC's Director of the Respiratory Therapy Program, the Director of Clinical Education, and the Interim Dean of Students, the purpose of which was to discuss the March 17, 2022 incident at MaineGeneral. (A.R. at 8.)

Then, on April 12, 2022, the Assistant Manager of Respiratory Medicine at Northern Light Eastern Maine Medical Center emailed KVCC's respiratory therapy

3

directors about concerns with the Plaintiff's clinical behavior and performance. (A.R. at 66.) Specifically, the Assistant Manager described the Plaintiff's attempt to obtain an ABG without first removing the cap from her needle and then taking so long to set up for the ABG that the blood pressure cuff cycled twice. "She tried to obtain the gas with the cap on and when the cuff was going off." *Id*. Next, the Plaintiff failed to recognize that a cystic fibrosis patient was in "obvious distress" and "audibly wheezing," but the Plaintiff did not seem to pick up on these signs even as the respiratory therapist preceptor tried to address these concerns with the Plaintiff.

The following day, April 13, 2022, the Director of Clinical Education recommended that the Plaintiff "be dismissed from RTS 230 Clinical Practicum III." (A.R. 73.) The Director concluded her letter by recommending that the Plaintiff "be dismissed from the class," by noting that three area hospitals had stated that the Plaintiff would only be allowed to perform clinical work at their facilities, if she were supervised 1:1 by the Director of Clinical Education herself. *Id*.

## PROCEDURAL HISTORY

In a letter dated April 15, 2022, the Interim Dean of Students for KVCC informed the Plaintiff that she was suspended from the Respiratory Therapy Program based on information that on April 12, 2022, "patient safety was at risk under your care." (A.R. at 1.) Such conduct, if accurate, "would violate Sections 501, III, B16 of the Student Code of Conduct." *Id*.

4

The Plaintiff was given the opportunity to meet with the Dean, which she did, on April 21, 2022. Following that meeting, the Dean sent another letter to the plaintiff informing her that the Dean had "determined that it is more probable than not that on or about March 17th, 2022, and April 12th, 2022, you endangered patient safety." (A.R. at 2.) The Dean found that this conduct violated Section 501(III)(B)(16) of the Student Code, which provides that "any other conduct that threatens or endangers the health or safety of one's self or others," constitutes a violation of the Student Code. (A.R. at 82.) The Dean sanctioned the Plaintiff by dismissing her from the Respiratory Therapy Program. (A.R. at 2.)

The Plaintiff filed a "Stage 2" appeal of the Dean's decision to the Disciplinary Committee appointed by the College President. (A.R. at 84.). A Disciplinary Committee was convened, a hearing was held, and a decision was rendered upholding the dismissal sanction.

The Plaintiff then filed an appeal to the Superior Court pursuant to M.R. Civ. P. 80(B), which was given Somerset Docket No. AP-2022-03.[1] On May 10, 2023, the Superior Court (*Mills, A.R.J.*) found that the Disciplinary Committee's May 1, 2022 decision and the record on appeal were inadequate for meaningful judicial

---

[1] The Court notes that the Student Code of Conduct permits a "Stage Three" appeal to the College President, who is not bound by any prior decision. The Administrative Record contains no information as to whether the Plaintiff took an appeal to the College President, and the parties have not mentioned it. Nor has a potential issue of failure to exhaust administrative remedies by the Plaintiff been raised. Accordingly, the court will not discuss it further.

review. The court remanded the matter to the Disciplinary Committee for a new hearing "and to make a final decision that provides findings of fact based on a reviewable record.[2]

Following the remand order, the Disciplinary Committee held a new hearing on July 31, 2023, at which it received evidence from the Dean and the Plaintiff, which is included in the Administrative Record.[3] In an email dated August 9, 2023, the Disciplinary Committee upheld the Dean's finding of a violation of the Student Code and the sanction of dismissal from the Respiratory Therapy Program. The Disciplinary Committee made explicit findings, which are reproduced below.

> Specifically, the committee concluded that it was more probable than not that your conduct, on several occasions, spanning two semesters, dating November 2021, as well as February, March, and April 2022, disregarded the welfare, health or safety of the College community.
>
> The emails and related incident reports, all written contemporaneously, describe conduct that "threatens or endangers the health or safety of others" such as using aggressive measures to wake a patient; unsafe needle practices; failing to recognize a patient in obvious distress; and arguing with site staff about clinical evaluations and scores. We found the emails and reports to be credible because of the detail provided by hospital staff. We also found the notices — after the fact — from three different hospitals (Central Maine Medical Center; Maine General; and Northern Light Health) that they would not allow you back on site without one-on-one faculty supervision credible and compelling.
>
> The materials and records you supplied did not speak contemporaneously, or at all, to the conduct ascribed to you. The

---

[2] The court also observed that the Disciplinary Committee's decision is the "operative decision for review."

[3] As the Plaintiff points out, the hearing before the Disciplinary Committee was not recorded or transcribed. The Maine Administrative Procedure Act, however, does not apply to community colleges, and the Plaintiff has not brought to the court's attention any legal requirement that the Disciplinary Committee's proceedings be recorded in a manner capable of being transcribed. 5 M.R.S. § 8002(2).

> materials that were directly related were either reflective, after the fact, or contradictory to the contemporaneous record. We found the materials you provided in your testimony to be less credible than those supplied by multiple, independent clinical sites.

(A.R. at 79.)

Regarding the Plaintiff's assertion that the allegations against her were the product of racial bias, the Disciplinary Committee stated: "Despite your contention that these reports were the byproduct of racism, we did not find any evidence of racism, discrimination, or personal animosity in any of the provided documentation. Further, in your evaluations of site preceptors, you did not once mention discrimination as the reason for your scores." *Id.*

Finally, the Committee rejected the suggestion that the Plaintiff's conduct was an academic issue by stating: "The committee believes the timing (i.e., late in academic career), severity, nature, and number of incidents represents negligent behavior that is not simply an artifact of a student learning to perform clinical duties." *Id.*

On September 7, 2023, the Plaintiff filed her "Complaint for Review of Final Governmental Action and for Violation of Due Process Rights."[4] Her amended complaint was filed on October 27, 2023. Together with the complaints, the Plaintiff moved for an order to specify the future course of the proceedings, because she asserted two independent causes of action, namely, due process violations (Count II)

---

[4] *See* Note 1, *supra.*

7

and unlawful education discrimination in violation of 5 M.R.S. § 4601, *et seq*. (Count III).

Meanwhile, on November 27, 2023, KVCC moved to dismiss Counts II and III of the Amended Complaint as duplicative of the Rule 80B review of governmental action (Count I). In an Order dated January 22, 2024, the court (*Stokes, A.R.J.*) dismissed Count II (due process violation), but denied the motion to dismiss Count III (unlawful education discrimination), "at this time." The court directed that the Rule 80B review (Count I) be addressed and resolved first. Accordingly, the court denied the Plaintiff's motion to specify the course of the proceedings, and stated that "[f]urther action on Count III is deferred until after the court resolves Count I . . . ."

Briefing on Count I was completed on May 14, 2024.

## DISCUSSION

The parties appear to be in agreement that the court's review of the Disciplinary Committee's decision is "deferential and limited." *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768. The burden of persuasion to show error is upon the one seeking to overturn the decision below. The court's role is not to substitute its judgment for that of the decision-maker, particularly where the agency has made factual findings and credibility determinations. *Friends of Lamoine v. Town of Lamoine*, 2020 ME 70, ¶ 21, 234 A.3d 214. Rather, the court's review must be based on the Administrative Record and is limited to assessing whether the agency's decision was erroneous as a matter of law, was arbitrary and capricious or

8

an abuse of discretion, or was based on findings that were not supported by "substantial evidence in the record," meaning that there "is any competent evidence in the record to support a decision." *Osprey Fam. Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114; *21 Seabran, LLC v.Town of Naples*, 2017 ME 3, ¶ 10, 153 A.3d 113.

The Plaintiff's primary argument in seeking to overturn the Disciplinary Committee's dismissal decision is that neither the Dean nor the Disciplinary Committee should have treated her case as one involving a disciplinary matter under the Student Code of Conduct. Rather, she argues that her conduct while enrolled in the Respiratory Therapy Program was governed by the Respiratory Therapy Program Handbook (RT Handbook) in effect for the 2021-2022 academic year. (A.R. at 88). That Handbook provides for an "Academic Dismissal" from the program, with the opportunity to re-enter the program on a "probationary status." (A.R. at 112.) The insistence of the Dean and the Disciplinary Committee of invoking the Student Code of Conduct, rather than the RT Handbook, and treating this matter as a student disciplinary matter, warrants the court in vacating the decision, according to the Plaintiff.

In making this argument, the Plaintiff points to the following language in the RT Handbook: "Please note that a number of program policies differ from the College policy. The program policy is the presiding policy." (A.R. at 92.) From this the Plaintiff argues that respiratory therapy students at KVCC were told to follow the

9

Handbook and she relied on that representation that her conduct would be governed by the Handbook. *See* Plaintiff's Rule 80B Brief at 12.

The Plaintiff's argument is not convincing. First, that the RT Handbook states that it is the "presiding policy," in no way suggests that the Student Code of Conduct is inapplicable or that it is replaced by the Handbook. Indeed, the Code itself clearly states that it "applies *in addition* to other College and System policies and regulations, ... students whose conduct violates those authorities may also be subject to their sanctions and penalties." (A.R. at 81.) (emphasis in original). Even clearer, the RT Handbook itself incorporates within it the Student Code of Conduct, including that conduct "that threatens or endangers the health or safety of any person ..." is subject to discipline. (A.R. at 94.)

The decision to proceed under the Student Code of Conduct is for the college administration, and this court has no authority to intrude on that decision. The Plaintiff has argued that the Dean was required to follow the recommendation of the Director of Clinical Education that she be dismissed from the Clinical Practicum III Class, but neither the Dean nor the Disciplinary Committee were bound to follow that recommendation, and the Plaintiff has not directed the court's attention to any relevant legal authority to the contrary.

Considering the record evidence, which the court finds meets the "substantial evidence" test, the choice of proceeding under the Code of Conduct, and treating it as

10

a potential disciplinary matter, was not an error of law, nor was it arbitrary, capricious, or an abuse of discretion.

The Plaintiff's due process challenge is also rejected by the court. The Plaintiff was given notice and an opportunity to be heard before the Dean, and again, *de novo*, before the Disciplinary Committee. The Plaintiff was allowed to, and did, present evidence before the Disciplinary Committee, and the Committee made detailed and specific findings and conclusions, which this court may not disturb.

For the foregoing reasons, the Rule 80B appeal will be denied.

<u>COUNT III</u>

The court wishes to address Count III of the Amended Complaint, which alleges unlawful education discrimination under State law. This count remains pending, as it survived KVCC's motion to dismiss as being duplicative of the Rule 80B appeal. In her Rule 80 brief, the Plaintiff made no mention of any claim the Dean or the Disciplinary Committee was racially biased against her in dismissing her from the Respiratory Therapy Program. Any claim of racial bias on the part of the decision-maker or that the decision was based on racially biased information, would most certainly be grounds for a reviewing court to vacate that decision, and would provide the Plaintiff with the precise relief she is seeking.

The court has reviewed the Administrative Record in detail and can find no evidence of any kind that racial bias played any part in the proceedings below, or the events giving rise to those proceedings.

In her reply brief, the Plaintiff explains that she did not address the issue of discrimination in her main Rule 80B brief because she was following the court's order of January 22, 2024, that "[f]urther action on Count III is deferred until after the court resolves Count I [Rule 80B]."

Apparently, the Plaintiff has misconstrued the court's January 22, 2024 order. Nothing in that order suggests that evidence of racial bias in the Administrative Record, could not or should not be brought to the court's attention in the parties' principal briefs on Count I.

From the order of January 22, 2024, it should have been clear that the court was uncertain as to what to do with Count III. Thus, it would have been helpful to the court had the Plaintiff identified where, in the Administrative Record, there was evidence of racial bias. The Amended Complaint uses the same factual allegations in Counts I and III. Based on the Court's comprehensive review of the Administrative Record, it concludes that Count III is duplicative of Count I. Since the Count I, Rule 80B appeal, will be denied, Count III will also be dismissed.

### CONCLUSION

The entry is:

> Count I of the First Amended Complaint is denied, and the
> decision of the KVCC Disciplinary Committee is affirmed.
>
> Count III of the First Amended Complaint is dismissed.

12

The clerk is directed to incorporate this order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATED: August 12, 2024

William R. Stokes
Active Retired Justice
Superior Court