1999 ME 73

**Leon KIRKPATRICK et al.**

v.

**CITY OF BANGOR.**

Supreme Judicial Court of Maine.

Argued Feb. 4, 1999.
Decided May 13, 1999.

Charles E. Gilbert III (orally), Gilbert Law Offices, P.A., Bangor, for plaintiffs.

John K. Hamer (orally), Norman S. Heitmann III, City of Bangor Legal Department, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The City of Bangor appeals from a judgment entered in the Superior Court (Penobscot County, *Kravchuk, C.J.*), pursuant to 17 M.R.S.A. § 2851 (Supp.1998), vacating the order of the City Council to demolish, within 30 days, a building owned by Leon and Gertrude Kirkpatrick that had been declared a danger and a nuisance. The court affirmed the City Council's finding that the building constituted a danger and a nuisance, but concluded that due process mandates that, prior to issuing an order of demolition, the City Council provide the Kirkpatricks with a list of the defects that render the property dangerous and a nuisance, and a reasonable time in which to make repairs. Because we conclude that the Kirkpatricks were afforded adequate due process, we vacate the Superior Court's judgment.

[¶ 2] The Kirkpatricks purchased property located at 30 Highland Avenue, Bangor, in the 1950's, using it as a rental property until 1983. The building was originally divided into five separate apartments with a shared bathroom and no central heating. To meet applicable housing codes for a five unit apartment building, the Kirkpatricks installed central heating and individual bathrooms for each apartment. Mr. Kirkpatrick, a licensed master electrician, has performed most of the necessary maintenance and repairs on the premises.

[¶ 3] The property remained inhabited and in compliance with applicable housing codes until the early 1980's when tenants, responsible for purchasing their own fuel, failed to heat the building, causing the pipes to freeze and burst. Mr. Kirkpatrick, because he owned other "more desirable" investment properties, had health problems, and was medically advised to reduce his stress, chose not to repair the heating system. In 1983, the property was placarded as "unfit for human habitation" for lack of heat. The property has remained vacant since.

[¶ 4] In early 1996, the Bangor Code Enforcement Office notified the Kirkpatricks that it planned to conduct an inspection of the building because it had remained vacant for a significant period of time and there was a possibility of either structural defects or fire hazards. Following inspection, the City Council, on August 29, 1996, notified the Kirkpatricks that a public hearing would be held to "decide whether to condemn the building or structure . . . as a dangerous building. . . ." The public hearing, held October 28, 1996, revealed the following evidence.

[¶ 5] Beginning in 1988, the CEO was required to visit the building 39 times. Although the majority of visits resulted from complaints that the building was unsecured following break-ins, several complaints related directly to the condition and safety of the building.[1] In the CEO's opinion, the building

1. On April 19, 1988, a City Council memo noted that the property was rapidly approaching condemnation. On August 2, 1989, a complaint was filed addressing the general condition of the building and yard. In 1993, in response to complaints, the City Council cited the Kirkpatricks

was dilapidated from lack of maintenance. He described the building as obsolete [2] and a fire hazard,[3] and estimated that rehabilitation of the property would cost between $50,-000 and $75,000. The Housing Inspector testified that the building had numerous problems, including: structural problems in the foundation, rotted decks, broken windows, missing windows, rotted fascia trim, rotted wood siding, missing steps, rotted steps, no exterior lighting, a rotted porch overhang, and that the building's two chimneys were in a state of disrepair. The driveway had grassed over, there was a retaining wall in the front yard in need of repairs, and the inspector feared that the building was extensively contaminated with lead paint. Moreover, he stated that the interior of the building needed new paint, a new electrical system, new kitchens, and new bathrooms.

[¶ 6] The City Engineer also testified concerning the structure of the building. He stated that there were significant structural cracks in the brick walls that had been recently mortared over and painted, there were signs of recent movement in the front corner of the house, and one wall had a significant bulge. He also noted foundation problems in the rear of the house, a sagging roof, and movement in the rear, wooden portion of the house.

[¶ 7] The Kirkpatricks contended that the majority of structural defects in the building have existed since they purchased it over 40 years ago. They recognized that the building needed repairs, but they offered no time frame in which the property would be rehabilitated. The Kirkpatricks' attorney stated that the housing market was poor and "what is the point of spending a lot of money to fix something up in a poor market." Furthermore, he stated that he wished he could state that "in 6 months x will happen, in 12 months

y will happen, and that in 18 months the building will be completely rehabilitated. I can't make that representation to you." The Kirkpatricks stated that they would comply with an order by the City to make some reasonable progress, but offered no specific plan for rehabilitating the building and expressed no intention of completely rehabilitating it in the near future.

[¶ 8] The City Council determined that the building was structurally unsafe and unstable, a fire hazard, and unsuitable for use as a residence. Accordingly, the City Council adjudged the building to be dangerous and a nuisance, pursuant to 17 M.R.S.A. § 2851, and ordered the Kirkpatricks to demolish the building within 30 days. If the Kirkpatricks failed to demolish the building, the order empowered the CEO to demolish or remove the building at the Kirkpatricks' expense. In response, the Kirkpatricks filed a two-count complaint in the Superior Court, alleging in Count I, brought pursuant to M.R. Civ. P. 80B, that the order was arbitrary, capricious, and not supported by the evidence, and in Count II, that the City Council was taking property without just compensation.[4] In the Rule 80B action, the Kirkpatricks raised three issues before the Superior Court: (1) whether there was sufficient evidence in the record to support the City Council's determination that the building was dangerous and a nuisance; (2) whether the City Council improperly relied on aesthetic concerns when condemning the property; and (3) whether due process requires the City Council to give the property owner a reasonable opportunity to repair the structure prior to an order of demolition.

[¶ 9] The court rejected the Kirkpatricks' contention that the evidence was insufficient to support the City Council's con-

---

for failing to remove junked cars from the premises. In 1994, neighbors complained that the Kirkpatricks failed to mow the grass and failed to remove trash from the yard. In response, the City Council issued an order to clean and mow.

2. The Kirkpatricks had previously rented the house as a multi-dwelling residence. Because of a change in zoning laws and the loss of its legally non-conforming status, the property may only be used as a single-family or two-family dwelling.

3. The Bangor Fire Department issued a memorandum stating that because of the property's deteriorated condition, in the event of a fire, the response should be limited to protection of exposure and that no interior attack should be undertaken.

4. The Superior Court found in favor of the City on the claim for a taking without just compensation.

clusion that the building was dangerous and a nuisance. The court also concluded that the City Council properly relied on public safety concerns when making its determination. The court, however, determined that because demolition of a building is a drastic measure with constitutional implications, the Kirkpatricks were entitled to both a list of the structural defects that rendered the property dangerous or a nuisance, and a reasonable opportunity to make the necessary repairs. The City contends that due process requirements were met by the notice actually given and the hearing actually provided.

[¶ 10] When the Superior Court acts as an appellate court, we review directly the evidence presented at the administrative hearing. *See Goldstein v. Town of Georgetown*, 1998 ME 261, ¶ 5, 721 A.2d 180, 181. Our review of issues of law decided by the Superior Court is de novo. *See Ferraiolo Constr. Co. v. Town of Woolwich*, 1998 ME 179, ¶ 9, 714 A.2d 814, 817.

I.

[¶ 11] A municipality may, after providing a building owner with both notice and hearing on the matter, adjudge a building or structure to be dangerous or a nuisance. See 17 M.R.S.A. § 2851.[5] It then has authority to *"make and record an order prescribing what disposal must be made of that building or structure."* *Id.* Nothing in the language of the statute limits the remedies available to the City when ordering what disposal must be made and we have previously recognized the authority of a municipality to order a building or structure demolished after adjudging it to be dangerous or a nuisance. *See Michaud v. Bangor*, 159 Me. 491,

494, 196 A.2d 106 (1963) ("The act of demolition, properly premised, was within the ordinant power of the city and was, therefore, not ultra vires"). See also EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 24.561 (3d ed.1989) ("a municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health"). The City therefore had the authority to issue an order of demolition.

II.

[¶ 12] The court determined that, in addition to the notice given and the hearing provided, in order to comply with the due process requirements of Article 1, Section 6–A of the Maine Constitution and the Fourteenth Amendment of the federal constitution, the City was required to provide the Kirkpatricks with a list of the specific defects that render the property dangerous and a nuisance, and grant them a reasonable time to make the necessary repairs.

[¶ 13] The due process clause of the Maine and federal Constitutions guarantee due process before the state deprives a citizen of a property right.[6] *See Board of Overseers of the Bar v. Lefebvre*, 1998 ME 24, ¶ 15, 707 A.2d 69, 73. See also U.S. Const. amend. XIV, § 1; Me. Const. art. 1, § 6–A. The process due an individual will "vary from case to case ... to assure the basic fairness of each particular action according to its circumstances." *Fichter v. Board of Envtl. Protection*, 604 A.2d 433, 437 (Me.1992) (quoting *Secure Env'ts, Inc. v. Town of Norridgewock*, 544 A.2d 319, 324–25 (Me.1988)). When assessing whether an individual's due process rights have been violated, we analyze three factors:

5.  17 M.R.S.A. 2851 provides that

Whenever the municipal officers in the case of a municipality, or the county commissioners in the case of the unorganized or deorganized areas in their county, find that a building or structure ... is structurally unsafe; unstable; unsanitary; constitutes a fire hazard; is unsuitable or improper for the use or occupancy to which it is put; constitutes a hazard to health or safety because of inadequate maintenance, dilapidation, obsolescence or abandonment; or is otherwise dangerous to life or property, they may after

notice and hearing on this matter adjudge the same to be a nuisance or dangerous and may make and record an order prescribing what disposal must be made of that building or structure.

6.  "This Court 'has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process.'" *State v. Rosado*, 669 A.2d 180, 182 (Me.1996) (quoting *Penobscot Area Hous. Dev. Corp. v. Brewer*, 434 A.2d 14, 24 n. 9 (Me.1981)).

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail.

*Balian v. Board of Licensure in Medicine,* 1999 ME 8, ¶ 10, 722 A.2d 364, 367 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

[¶ 14] There is no dispute that destroying the Kirkpatricks' building, valued by the City for tax purposes in 1997 at $25,600, affects an important private property interest that implicates due process. *See Michaud v. City of Bangor,* 159 Me. 491, 494–95, 196 A.2d 106 (1963).

[¶ 15] Nor is there any dispute that the Kirkpatricks were entitled to notice and a hearing before any action was taken by the City against their property. This is not a case, however, where the municipality failed to provide the property owners with sufficient notice and a public hearing. The City Council notified the Kirkpatricks, almost two months in advance, that a public hearing would be held to determine "whether to condemn the building or structure . . . as a dangerous building. . . ." At the hearing, the City presented testimony from the CEO, the Housing Inspector, and the City Engineer, describing in great detail the structural defects in the building. The Kirkpatricks had a full opportunity to present contrary evidence. The issue presented is, in these circumstances, whether the Kirkpatricks were entitled to be provided with a list of the specific repairs necessary to avoid demolition and a reasonable amount of time to make such repairs. The "fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are

adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." *McNaughton v. Kelsey,* 1997 ME 182, ¶ 6, 698 A.2d 1049, 1052 (citations omitted). The notice and opportunity for a hearing "must be granted at a meaningful time and in a meaningful manner." *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

[¶ 16] The Kirkpatricks contend that they are entitled to something beyond the notice they were given and the hearing they participated in. Although the individual property interest of the Kirkpatricks is an important one, and the destruction of property is a drastic remedy that should not be ordered unless absolutely necessary, *Miles v. District of Columbia,* 354 F.Supp. 577, 582 (D.D.C. 1973) (citing *Childs v. Anderson,* 344 Mich. 90, 73 N.W.2d 280 (1955)),[7] nevertheless, in this case the action taken by the City was justified. Despite their property being "unfit for human habitation" for over 15 years and despite receiving numerous complaints and visits by the CEO, the Kirkpatricks have failed to make a significant attempt at rehabilitating the property. The Superior Court affirmed the finding of the City that the building was dangerous and constituted a nuisance within the meaning of 17 M.R.S.A. § 2851.[8] The Kirkpatricks do not challenge that factual finding. The City provided the Kirkpatricks with an appropriate forum to present a plan of rehabilitation or other alternatives to demolition. The Kirkpatricks failed to present any reasonable plan or alternative. Instead, the City Council was told that a depressed housing market provided no incentive to the Kirkpatricks to repair and restore the property and that they had no specific plan or intention to rehabilitate the building. Indeed the Kirkpatricks could not even guarantee that the property would be rehabilitated in 18 months. Based on the evidence before it, the City could reasonably conclude that the Kirkpatricks had no intention to repair and rehabilitate the property.

7. *See also* EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 24.561 (destruction of property is a "drastic remedy" and therefore must be a remedy of last resort); *City of Minot v. Freelander,* 380 N.W.2d 321, 324 (N.D.1986) (destruction of property is a remedy of last resort).

8. The Superior Court, in affirming the findings of the City Council, noted that the record reflected that the building has ·"structural deficiencies, possible fire hazards and inadequate maintenance".

In the absence of such an intent and of a plan to restore the property, the conclusion of the City that demolition was the appropriate remedy was reasonable and due process did not impose on the City the additional duty of providing the Kirkpatricks with a specific list of the necessary repairs.

[¶ 17] If a building is a danger, or constitutes a nuisance, the City has a substantial interest in eliminating that danger and that nuisance, and as long as it comports with due process, the City, pursuant to 17 M.R.S.A. § 2851, may act to remove the building. When, as here, the property has been vacant for years, the property owners have received multiple notices of problems with the building, and they present no plan and express no intention to repair the building at the hearing convened for the very purpose of determining whether the building should be condemned, due process does not require yet another opportunity for the property owners to address the deficiencies. Moreover, imposing on the City in this case, the additional responsibility of providing the owners with a list of the specific repairs sufficient to prevent demolition would be unnecessary and an undue administrative burden, and would allow a dangerous building to remain in that condition for an indeterminate period of time. The determination that the building of the Kirkpatricks is dangerous and a nuisance was made only after notice and a full hearing. No reasonable alternative to the disposal of that building was presented at that hearing. 17 M.R.S.A. § 2851 authorized the disposal remedy chosen by the City and the due process afforded to the Kirkpatricks was adequate.

The entry is:

Judgment as to Count II is affirmed. Judgment as to Count I is vacated. Remanded to the Superior Court for the entry of a judgment for the City of Bangor.