MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:      2021 ME 45
Docket:        Ken-20-134
Argued:        March 10, 2021
Decided:       September 16, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

KIMBERLY LAMARRE et al.

v.

TOWN OF CHINA et al.

CONNORS, J.

[¶1]  The Town of China code enforcement officer (CEO) issued Nicholas Namer an after-the-fact permit to allow the placement of a trailer on his lot. Kimberly and Anthony LaMarre, abutters, objected, arguing that the trailer was not a "recreational vehicle" (RV) within the meaning of the Town of China's Land Use Ordinance allowing such placement.  The Board of Appeals affirmed. The Superior Court (Kennebec County, *Stokes, J.*) reversed.  *See* M.R. Civ. P. 80B. The Town and Namer appeal to us from that reversal.  Because the operative decision of the CEO is deficient for purposes of judicial review, we remand for the CEO to issue a reviewable decision, based on record evidence, after proceeding in a manner that meets the minimum requirements of administrative due process.

## I. BACKGROUND[1]

### A. The Permit

[¶2]  Namer owns a lot with five seasonal camps in China.  In June and July 2018, Namer cleared trees and vegetation, installed a gravel pad, and placed a "Park Model" trailer on the pad without obtaining a permit.  The CEO apparently issued a notice of violation to Namer and his mother, Marie Bourque-Namer, in late July 2018.  The CEO later rescinded the notice of violation on the grounds that the trailer's placement complied with the Town's Land Use Ordinance[2] and issued an after-the-fact permit.  The LaMarres objected to the trailer's placement and sought review by the Board of Appeals of the CEO's decision.[3]

---

[1]  We draw the factual background from the undisputed facts and the procedural record.  *See Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 11, 252 A.3d 504.

[2]  The Town of China Land Development Code contains three chapters relevant to this appeal: Chapter 2, Land Use Ordinance; Chapter 9, Appeals; and Chapter 11, Definitions.  For purposes of this opinion, we refer to the relevant provisions of the Land Development Code as "the Ordinance."

[3]  More specifically—and confusingly—the CEO stated that in the spring of 2018, he "verbally approved" the location of the trailer.  In late July that year, the CEO issued a notice of violation to Namer and Bourque-Namer for failing to obtain a permit.  The notice of violation is not included in the record, and nothing in the record indicates that this notice was ever in writing.  The record includes an email from Bourque-Namer to the CEO dated July 26, 2018, in which she stated that she was disturbed by his "assertion" that she violated the Ordinance.  In the email, Bourque-Namer makes factual assertions about the trailer, indicates that the CEO had commented that it was a "mobile home," and compares the trailer to other models.  She further stated that she remembered discussing the issue "at the time of [their] walkthrough and had pictures on [her] cell phone to show [him]" and that she had "ask[ed] [him] for something in writing and [he] asserted that it wasn't necessary."  On August 8, 2018, Kimberly LaMarre and another abutter complained, stating that they understood that the Namers had been told to remove the trailer.  In a "decision" memorialized in writing on August 9, 2018, the CEO apparently rescinded his notice of violation.  On August 15, 2018,

## B.     The Ordinance

[¶3]   The Ordinance allows for "[i]ndividual private campsites," China, Me., Land Development Code, ch. 2, § 5(P)(II) (Apr. 6, 2019), which are defined as "[a]ny premises providing temporary accommodation in a recreational vehicle or tent and used exclusively by the owner of the property and his or her family and friends," *id.*, ch. 11 (Apr. 6, 2019).   Prior to establishing such a campsite, "[a] permit is required from the CEO."   *Id.*, ch. 2, § 5(P)(II)(h).   The Ordinance defines "recreational vehicle" as

> [a] vehicle or an attachment to a vehicle designed to be towed, and designed for temporary sleeping or living quarters for one or more persons, and which may include a pick-up camper, travel trailer, tent trailer, camp trailer, and motor home.   In order to be considered as a vehicle and not as a structure, the unit must remain with its tires on the ground, and must be registered with the State Division of Motor Vehicles.

*Id.*, ch. 11.

---

Bourque-Namer applied for an after-the-fact permit for the trailer, which the CEO issued on August 21, 2018.   Almost a year later, in July 2019, the LaMarres met with the town manager to follow up on their complaints.   By this time, there was a new CEO, who told them that a permit had been issued but that "the Town was investigating that decision."   Following a site visit on July 8, 2019, the new CEO then orally told the LaMarres that he agreed with the first CEO's decision to grant the permit and that the LaMarres could appeal "this decision" to the Board.   The LaMarres filed their appeal with the Board on August 6, 2019, within thirty days after this oral communication.

## II. DISCUSSION

## A.    The Operative Decision Is That of the CEO.

[¶4]  If the scope of the Board's review is de novo, we review the Board's decision on appeal; if, however, the scope of the Board's review is appellate, we review the CEO's decision directly.  *See Mills v. Town of Eliot*, 2008 ME 134, ¶¶ 13-16, 955 A.2d 258.

[¶5]   In the absence of ordinance language explicitly providing for appellate review, by statute, the Board's review of the CEO's decision is de novo. 30-A M.R.S. § 2691(3)(C) (2021); *Mills*, 2008 ME 134, ¶ 14, 955 A.2d 258.  The relevant ordinance language here provides:

> Scope of Review: The Board of Appeals may reverse the determination of the Planning Board or the Code Enforcement Officer if it determines that either:
>
> a. Any finding of fact is unsupported by substantial evidence and/or;
>
> b. Any conclusion of law is clearly erroneous.

China, Me., Land Development Code, ch. 9, § 2(B)(IV) (June 1, 1996).  This language is similar to ordinance language that we have previously held

provides for appellate review. *See Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 11, 868 A.2d 151. We therefore review the decision of the CEO.[4]

**B. The CEO Did Not Issue a Judicially Reviewable Decision.**

[¶6] It is black letter law that meaningful judicial review of a decision requires that the decision contain findings of fact sufficient to apprise the reviewing court of the decision's basis and that those findings be based on substantial evidence in the record. *See Mills*, 2008 ME 134, ¶ 19, 955 A.2d 258; *Chapel Rd. Assocs., L.L.C. v. Town of Wells*, 2001 ME 178, ¶¶ 9-10, 787 A.2d 137. The administrative record here does not contain a CEO decision with reviewable findings of fact based on record evidence.

[¶7] Among the records of the activity before the CEO, *see supra* n.3, the most likely candidate for the relevant decision for review is the issuance of the after-the-fact permit. But that permit is merely that—a permit. It provides only that the CEO is authorizing Namer to "locate a camper pursuant to the

---

[4] Before the Board hearing, there was some uncertainty as to whether its review would be de novo or appellate. The Board decision itself does not recite the standard of review it applied, and it is unclear whether the Board in fact undertook a de novo or appellate review. Although we have previously noted that "[a] town need not use particular language, such as the word 'appellate' in establishing appellate review" and that "[w]e have on numerous occasions construed an ordinance that did not use the word 'appellate' to nonetheless require the appeals board to undertake appellate, rather than de novo, review," *Friends of Lamoine v. Town of Lamoine*, 2020 ME 70, ¶ 15, 234 A.3d 214, to avoid confusion and uncertainty, we strongly encourage municipalities to use clear language, such as expressly including the terms "de novo" and "appellate," when drafting their ordinances.

6

application and site plan" and contains no findings of fact or conclusions of law. Accordingly, the permit "is insufficient to allow for meaningful appellate review." *Appletree Cottage, LLC v. Town of Cape Elizabeth*, 2017 ME 177, ¶ 10, 169 A.3d 396.

[¶8] Despite the fact that the LaMarres' Board appeal identifies the decision being appealed as the issuance of the permit, the decision on which the parties and the Board have focused is the CEO's rescission of the notice of violation. Presumably, the parties have done so because this is the only CEO position stated in writing and that includes some analysis and statements labeled "findings." But there is no reviewable record associated with this rescission decision.

[¶9] The after-the-fact permit was issued pursuant to an application that includes evidentiary material, such as a photograph of the trailer. This material cannot provide a reviewable record for the recission, however, because the CEO's decision rescinding the notice of violation was issued a week *before* that permit application was even filed. The recission decision itself simply states that the rescission is "due to new information that [the CEO] discovered when meeting with the Namers on 8-7-18 and more carefully investigating facts and Ordinance requirements." There is no identification of what this "new

information" was, or what other material the CEO reviewed in his investigation of the facts. This is not sufficient to provide a record for appellate review. *See Appletree Cottage, LLC*, 2017 ME 177, ¶¶ 9-10, 169 A.3d 396.

[¶10] In sum, because there appears to be no CEO decision with findings of fact tethered to a reviewable record, we must remand.

## C. A Remand to the CEO Is Often Necessary when Board of Appeals Review Is Appellate.

[¶11] This difficulty in identifying a reviewable CEO decision is not unusual, and we have remarked on it before. *See id.* ¶ 12 n.6 ("[O]rdinances governing a CEO's review of and action on a permit application may not provide a mechanism for creating a record adequate for appellate review.").

[¶12] In the vast majority of local permitting processes, an applicant seeks a permit, the CEO grants or denies it based on the application, and that is the end of the matter, with no appeal. A two-fold problem arises, however, when someone objects to a permit and the scope of the Board's review is appellate.

[¶13] First, often by the time interested persons, such as abutters, learn of the issuance of a permit to which they object, the decision has already been

8

made by the CEO based on whatever information the applicant submitted.[5]  If objectors cannot submit their opposing evidence to the Board—a material distinction between de novo and appellate review—then they are deprived of a critical component of administrative due process.  *See Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 11, 759 A.2d 731 (stating that the essential elements of adjudication include the right to present evidence and rebut opposing evidence).

[¶14]  Second, courts, planning boards, and some boards of appeals adjudicate; that is their function.  In contrast, adjudication is not a usual CEO task.  Unsurprisingly, when an objection by an interested person comes to the attention of a CEO during the permitting process, the CEO is unfamiliar with the minimum requirements of due process and the prerequisites for preparing a record and a decision sufficient for meaningful appellate review.

---

[5]  There is no statutory requirement for a CEO to notify abutters of permit applications.  *See Viles v. Town of Embden*, 2006 ME 107, ¶ 12, 905 A.2d 298.  The Ordinance did not impose any such requirement either.  Given the lack of clear notice to the LaMarres as to what was happening before the CEO with respect to their objections, the Board voted to allow the LaMarres to file their appeal after the time period set forth in the Ordinance.  Because the Ordinance itself does not contain a good-cause provision extending the filing deadline with the Board, the decision whether good cause existed to extend that deadline was one for the Superior Court, not the Board, to make, *see id.* ¶ 9, and we would review the Superior Court's decision subject to an abuse-of-discretion standard as to the court's determination of the existence of good cause and a clearly erroneous standard as to the court's factual findings.  *See id.* ¶ 9; *Otis v. Town of Sebago*, 645 A.2d 3, 4-5 (Me. 1994).  The Superior Court here, after looking at the evidence submitted to the Board on this issue, concluded that good cause existed.  No one has challenged this good-cause determination.

[¶15]  For these reasons, in order to avoid the frequent necessity of time-consuming and costly remands, we strongly urge municipalities to provide for de novo review of CEO decisions by boards of appeals.  Because the Ordinance here provides for appellate review, China, Me., Land Development Code, ch. 9, § 2(B)(IV), we must remand for the CEO to issue a reviewable decision.  *See Appletree Cottage, LLC*, 2017 ME 177, ¶ 12, 169 A.3d 396.  The evidence upon which the CEO makes his decision must be identified and contained in the record.  *See Mills*, 2008 ME 134, ¶¶ 19-20, 955 A.2d 258.  Namer and the LaMarres must be permitted to submit their evidence and rebut each other's evidence, no substantive ex parte communications with the CEO should take place, and the CEO's decision must include findings of fact and conclusions of law sufficient to understand the basis for that decision.  *See id.* ¶ 20.

**D.  On Remand, the CEO Should Consider the Evidence in Light of the Language of the Ordinance as a Whole.**

[¶16]  Finally, in assessing the evidence submitted on remand, the CEO should consider the following when interpreting the Ordinance.[6]

---

[6] The parties argue that a remand is not necessary because the question whether the trailer is an RV is purely legal.  But the issue whether a particular trailer is a "recreational vehicle" within the meaning of the Ordinance is a mixed question of fact and law.  *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768.  This means that, if the administrative decision maker's characterization of the trailer is reasonable, we will give it deference.  *See id.* ¶ 9.  ("[W]e review the interpretation of the ordinance *de novo*, but we afford the Board's ultimate characterization of the structure substantial

[¶17]    The definition of "recreational vehicle," China, Me., Land Development Code, ch. 11, must be read in light of the Ordinance as a whole. *See Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 22, 979 A.2d 86. Section 5(P)(II)(g) of the Ordinance provides that when "a recreational vehicle, tent or similar shelter is placed on-site for more than one hundred and twenty (120) days per year, all requirements for residential structures shall be met." China, Me., Land Development Code, ch. 2.

[¶18]    In rescinding the notice of violation, the CEO read "placed" as meaning "occupied," with the result being that the trailer need never be physically moved as long as it is not occupied for more than 120 days of the year.  This construction of section 5(P)(II)(g) is contrary to its plain language. *Compare Placed*, American Heritage Dictionary of the English Language (5th ed. 2016) (defining "placed" as "[t]o put in or as if in a particular place or position"), *with Occupy*, *id.* (defining "occupy" as "[t]o fill up" and "[t]o dwell or reside in"). Whether this trailer is an RV or not, it must be moved off-site every 120 days or be treated as a structure.   China, Me., Land Development Code, ch. 2, § 5(P)(II)(g).

---

deference.").  Given the limited scope of our review of an administrative decision, we must remand for the decision maker to issue a reviewable decision based on record evidence. *See Palian v. Dep't of Health & Hum. Servs.*, 2020 ME 131, ¶¶ 41-43, 47-48, 242 A.3d 164.

[¶19]    Relatedly, the language of the Ordinance indicates that it distinguishes between a "vehicle" and a "structure." *See id.*, ch. 11 ("In order to be considered as a vehicle and not as a structure . . . ").  Although the Ordinance does not define "vehicle," the dictionary defines "vehicle" as "[a] device or structure for transporting persons or things."  *Vehicle*, American Heritage Dictionary of the English Language.  Maine statutes similarly define "vehicle" as "a device for conveyance of persons or property on a way."   29-A M.R.S. § 101(91) (2021).  The Ordinance defines a "structure" as "[a]nything built for the support, shelter or enclosure of persons, animals, goods or property of any kind, together with anything constructed or erected with a fixed location on or in the ground, attached or unattached," including "structures temporarily or permanently located."  China, Me., Land Development Code, ch. 11.

[¶20]  Finally, the Ordinance defines "recreational vehicle" as a vehicle or an attachment to a vehicle "designed" to be towed.  *Id.*  A trailer that *can* be towed is not necessarily *designed* to be towed.  *See Design*, American Heritage Dictionary of the English Language (defining "design" as "[t]o create or contrive for a particular purpose or effect").

12

[¶21]  Whether the Namer trailer fits the Ordinance's definition given these considerations and the evidence and arguments of the interested parties is, in the first instance, for the CEO to decide.

The entry is:

> Judgment vacated.  Remanded to the Superior Court with instructions to remand the matter to the Board of Appeals with instructions to remand to the code enforcement officer for proceedings consistent with this opinion.

Amanda Meader, Esq., East Winthrop, and Theodore Small, Esq. (orally), Skelton Taintor & Abbott, Auburn, for appellant Town of China

Alton C. Stevens, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, for appellant Nicholas Namer

Edmond J. Bearor, Esq., and Stephen W. Wagner, Esq. (orally), Rudman Winchell, Bangor, for appellees Kimberly and Anthony LaMarre

Kennebec County Superior Court docket number AP-2019-50
FOR CLERK REFERENCE ONLY