STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-22-029

ELVIN H. COPP and
RANDALL E. COPP,

Plaintiffs

v.

TOWN OF GRAY,

Defendant

DECISION AND ORDER

Plaintiffs-James Pross, Esq.
Defendant-Natalie Burns, Esq./
Mark Bower, Esq./Benjamin McCall, Esq.

Before the court is a Rule 80B complaint filed by plaintiffs Elvin and Randall Copp against

defendant Town of Gray. For the following reasons, the decision of defendant Zoning Board of

Appeals is affirmed in part, reversed in part, and remanded in part for further proceedings

consistent with this decision and order.

BACKGROUND

Record on Appeal

Defendant's Code Enforcement Officer at the time, Scott Dvorak, issued a notice of

violation dated April 28, 2022 to plaintiffs. The NOV provided:

> Please be advised that your property located at 71 Portland Road, Gray Maine ...
> is in violation of (1) the approved site plan dated December 9, 2005 (2) the Town
> of Gray Land Use Ordinance, Chapter 402, Article 10 and (3) the Consent
> Agreement between you and the Town, dated March 3, 2003 all recorded in the
> Cumberland County Registry of Deeds....
> In the above consent agreement, you were required to obtain and maintain a
> Recycling license with the Town of Gray....
> The above mentioned site plan, dated 12/9/2005 ... showed an approximate edge
> of the salvage yard. Using Google Earth's timeline, it appears that over the years
> since the dated site plan that you have enlarged the area beyond what was
> previously approved.

R. 001. The NOV contains a bulleted list of specific violations. The following are relevant to this

REC'D CUMB CLERKS OF
JUN 7 '23 PM3:04

1

appeal: (1) the parking spaces located on Route 100 were filled with semi-tractors, a concrete form truck, and buses; and (2) an access road and recycle yard were expanded on the southern end of the developed property. R. 001-002. The NOV required plaintiffs to contact the CEO within 30 days to establish a plan and time table to resolve the violation or defendant would pursue an enforcement action. R. 002.

Attached to the NOV are the consent agreement, a letter from defendant to Scott Collins, an amendment to the consent agreement, and the site plan.[1] R. 003-008. The consent agreement, dated by the District Court (Cumberland County, signed "RB") March 3, 2003, provides, in part:

> NOW COME the parties in the above-captioned case and stipulate and consent to Judgment as follows:
> .... [The language in italics below is crossed out, "omitted," and initialed "EC."]
> 4. *The parties stipulate to the following:*
> *a) Defendant has accumulated many unserviceable, discarded, worn out, or junked motor vehicles on the Premises, in addition to box cars, cranes, light poles, engines, transmissions, tires, scrap metal, scrap construction material, discarded, scrapped and junk lumber and other scrap materials without a license or permit in violation of 30-A M.R.S.A. § 3753;*
> *b) Defendant established a trucking terminal and trailer storage operation without first obtaining site plan approval, as required by Section 402.33 of the Town of Gray Zoning Ordinance ("Zoning Ordinance");*
> *c) Defendant has established an automobile, truck and equipment sales business on the Premises without first obtaining site plan approval, as required by Section 402.33 of the Zoning Ordinance;*
> *d) Defendant is in arrears for back property taxes on the Premises owed to the Town (approximately $13,700); and*

---

[1] A full-sized copy of the site plan is folded and enclosed in the booklet containing the record on appeal. Relevant to plaintiffs' argument, the site plan's note 11 states:

> 11. Recycling business "defined in Title 30-A, section 3572 [*sic*], subsection 1-A as "a dealer or a recycler licensed under Title 29-A, sections 851 to 1112 who purchases or acquires salvage vehicles for the purpose of reselling the vehicles or component parts of the vehicles or rebuilding or repairing salvage vehicles for the purpose of resale or for selling the basic materials in the salvage vehicles, as long as 80% of the business premises specified in the site plan section 3755-A, subsection 1, paragraph c [i]s used for automobile recycling operations."
> Dimensional Requirements:
> a) Minimum lot size: 40,000 sq. ft.
> b) Minimum frontage: 200 ft.
> c) Front setback: 10 ft.
> d) Side setback: 15 ft.
> e) Rear setback: 20 ft.
> f) Maximum lot coverage: 50 %

2

e) Plaintiff does not have a current septic inspection on file with the Town that shows the existing septic system to be adequate for the current use on the Premises.

. . .

WHEREFORE, it is hereby agreed, stipulated and ORDERED:

. . . .

B. A complete Town of Gray Planning Board application for site plan approval on the Premises must be submitted prior to April 1, 2003 and must include all relevant materials for storage..., sales, repair, building construction, signs, visual screening and any other uses or construction Defendant plans to do on the Premises . . .

. . . .

J. Plaintiff agrees to relinquish its right to prosecute the Defendant, his heirs and assigns, for the violations as set forth herein.

R. 004-005. The amendment to the consent agreement signed by plaintiff Elvin Copp on July 16, 2003, and by defendant on July 14, 2003, states, in part, that plaintiff Elvin Copp would have a site plan application to the Planning Board by August 1, 2003. R. 007.

A letter from defendant's Town Planner and Town Code Enforcement Officer to Scott Collins, P.E. Project Manager, states that the Planning Board had approved the October 5, 2005 site plan pursuant to seven conditions, including: "The Planning Board Standard Condition of Approval Number One applies to the approval process" and "that the original consent agreement dated February 28, 2003 along with the Planning Board approval be recorded and a note on the site plan be made stating that the plan was approved as a result of the consent decree." R.006.

In their May 27, 2022 administrative appeal to the Zoning Board of Appeals, plaintiffs detail the basis for their appeal of the NOV and reserve the right to submit additional arguments and evidence at a hearing. R. 014-018. A hearing before the ZBA was held on June 22, 2022 with Attorney James Pross representing the plaintiffs and Attorney Natalie Burns representing defendant. R. 031. The ZBA issued its decision on the appeal on July 11, 2022. R. 116-117. It conducted a *de novo* review, accepting written exhibits, photographs, and testimony from the parties. R. 116. The ZBA found that plaintiffs had failed to obtain a recycling license, required

3

by the site plan; that the recycling business had expanded beyond the limits in the site plan on the southerly side of the property; and that the parking spaces on Route 100 were filled with semi-tractors, a concrete truck, and buses in violation of the site plan. R. 116-117.

Complaint

Plaintiffs allege five counts. Count I, consolidated with counts III and IV, is before the court while counts II and V are stayed pending resolution of the 80B appeal.

Count I for review of government action contains seven arguments: (1) the decision of the ZBA that plaintiffs failed to obtain an automobile recycling license in violation of a 2005 site plan is arbitrary and capricious and in violation of the consent agreement; (2) collateral estoppel prevents the defendant from prosecuting the Copps for failure to obtain a license based on the Consent Agreement; (3) the defendant violated due process by disallowing an administrative appeal on the issue of whether the site plan requires plaintiffs to obtain a license; (4) the ZBA exceeded authority by creating a new basis upon which plaintiffs are required to have a license; (5) the ZBA's finding that plaintiffs were violating the site plan by parking certain vehicles in approved spots was arbitrary and capricious and an abuse of discretion; (6) the ZBA was arbitrary and capricious when it relied on a hand-drawn sketch of the code enforcement officer as evidence that plaintiffs expanded the southerly edge of the salvage yeard; and (7) the ZBA was arbitrary and capricious when it concluded that footnote 11 on the site plan requires plaintiffs to obtain a license. Compl. 9-10.

In count III, plaintiffs request a declaratory judgment that footnote 11 in the site plan does not require plaintiffs to obtain and maintain a license under 30-A M.R.S. § 3753. Compl. 11-12. In count IV, plaintiffs request a declaratory judgment that the site plan does not limit the plaintiffs' right to park certain types of vehicles in the spaces along Route 100. Compl. 112-113. Counts III

4

and IV have been consolidated with the 80B appeal. Order dated 11-22-22.

Counts II and V are stayed pending resolution of the 80B review. Order dated 11-22-22. In count II, plaintiffs request a declaratory judgment that the consent agreement's paragraph J prohibits defendant from prosecuting plaintiffs for not having a license to operate their business under 30-A M.R.S. § 3753. Compl. 10-11. In count V, plaintiffs allege that defendant breached the consent agreement by issuing the notice of violation. Compl. 13-14. Plaintiffs also request legal fees and costs of bringing suit.

Counterclaim

Defendant filed a counterclaim, which is also stayed pending resolution of the 80B appeal. Order dated 11-22-22. The counterclaim is a land use enforcement action pursuant to 30-A M.R.S. § 4452. Counterclaim 14-17. Defendant argues that the plaintiffs' use exceeding the scope of the approved site plan violates the Town of Gray Zoning Ordinance § 402.10.17(F) and 30-A M.R.S. § 3758-A (junkyards and automobile graveyards). Counterclaim 15. Defendant requests the court order plaintiffs to (1) cease violations of the 30-A M.R.S. § 3753 license requirement and defendant's zoning ordinance, (2) remove all unregistered or uninspected motor vehicles in excess of two from the property, and (3) remediate the area on the south side of the property that has been cleared. In the alternative, defendant asks the court to order plaintiffs to seek site plan approval for the changes and comply with all requirements of the Zoning Ordinance and site plan. Defendant also seeks civil penalties. Counterclaim 16-17.

Procedural Orders

On August 23, 2022, the court issued a stay of the proceedings on the admisitrative appeal. Order dated 8-23-22. On November 22, 2022, the court issued a consented-to order on plaintiffs' motion to specify course of future proceedings. Order dated 11-22-22. The order provided that

5

counts I, III, and IV of the complaint would be treated as part of the Rule 80B appeal, while counts II and V would be consolidated and treated as an independent claim separate from the 80B appeal. The order specified that plaintiffs would be able to raise arguments related to the consent agreement in the Rule 80B appeal to the extent they are relevant to whether the ZBA's decision should be upheld or reversed without prejudice to future adjudication of counts II or V. Other than for discovery and certain motions, counts II, V, and the counterclaim are stayed pending the resolution of the 80B appeal.

LEGAL STANDARD

In an appellate capacity, the Superior Court reviews an administrative decision directly for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *McGhie v. Town of Cutler*, 2002 ME 62, ¶ 5, 793 A.2d 504. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. "It is black letter law that meaningful judicial review of a decision requires that the decision contain findings of fact sufficient to apprise the reviewing court of the decision's basis and that those findings be based on substantial evidence in the record." *LaMarre v. Town of China*, 2021 ME 45, ¶ 6, 259 A.3d 764 (citing *Mills v. Town of Eliot*, 2008 ME 134, ¶ 19, 955 A.2d 258); *see also 29 McKown LLC v. Town of Boothbay Harbor*, 2022 ME 38, ¶ 11, 277 A.3d 364. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). The court may not substitute its judgment for that of the decisionmaker and may not determine that a decision is wrong "because the record

6

is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

DISCUSSION

1. The Operative Decision for Review is the ZBA's Decision.

Plaintiffs argue that despite the *de novo* hearing that occurred before the ZBA, the NOV, and not the written decision of the ZBA, is the operative decision for review. Plaintiffs argue that the ZBA improperly conducted a *de novo* review rather than review in an appellate capacity. Defendant replies that the ZBA's written decision is the operative decision for review because the ZBA was authorized to review *de novo*. Defendant also argues that plaintiffs did not raise this issue below and have waived this argument.

"When the Superior Court acts as an appellate court, we review directly the operative decision of the municipality." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 13, 955 A.2d 258 (quoting *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168). When an administrative appellate body reviews the original decision *de novo*, the Superior Court reviews the appellate body's decision; otherwise the Superior Court reviews directly the original decision of the previous administrative body.

The Law Court has made clear that the Superior Court must review directly a *de novo* decision and not an appellate decision in a Rule 80B case. *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶¶ 4, 10, 15, 757 A.2d 773. A court must determine which decision it should review before engaging in review. *See Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 5, 868 A.2d 161 ("Before we address the substantive merits of the appeal, we have to determine which municipal decision we review, and we must examine whether the Board of Appeals undertook an appropriate review of the decision of the Planning Board.").

7

Where a ZBA acts as factfinder and decision-maker, an appellate court should review its decision directly, and where a ZBA acts only in an appellate capacity, an appellate court should review the underlying decision. *See Stewart*, 2000 ME 157, ¶ 4, 757 A.2d 773. When a ZBA improperly engages in *de novo* review, the court should review the underlying decision. *See Gensheimer*, 2005 ME 22, ¶¶ 15-16, 868 A.2d 161 (citing *Stewart*, 2000 ME 157, ¶¶ 4, 10, 15, 757 A.2d 773).

"The jurisdiction of a board of appeals 'is a question of law that must be ascertained from an interpretation of municipal statutes and local ordinances.'" *Gensheimer*, 2005 ME 22, ¶ 5, 868 A.2d 161 (quoting *Hathaway v. City of Portland*, 2004 ME 47, ¶ 14 n.1, 845 A.2d 1168). Under 30-A M.R.S. § 2691(3)(C),

> Unless otherwise established by charter or ordinance, the board shall conduct a de novo review of any matter before the board subject to the requirements of paragraph D. If a charter or ordinance establishes an appellate review process for the board, the board shall limit its review on appeal to the record established by the board or official whose decision is the subject of the appeal and to the arguments of the parties. The board may not accept new evidence as part of an appellate review.

30-A M.R.S. § 2691(3)(C). Defendant's Zoning Ordinance 402.9.2(B) provides that "appeals shall lie from the decision of the Code Enforcement Officer to the Board of Appeals" and that the Board shall have the power and duty

> To hear and decide where it is alleged there is an error in any order, required, decision, or determination by the Code Enforcement Officer in the enforcement of this Ordinance. The actions of the Code Enforcement Officer may be modified or reversed by the Board of Appeals, by concurring vote of at least three (3) members of the Board. Decisions of the Code Enforcement Officer may be reversed only upon a finding that the decision is clearly contrary to specific provisions of this Ordinance.

R. 120.

Plaintiffs argue that this language is substantially similar to the ordinance language at issue in *Gensheimer*, in which the Law Court found that the Board of Appeals should have performed

8

an appellate review. In *Gensheimer*, the Phippsburg town ordinance allowed the Board of Appeals, in relevant part,

> to interpret the provisions of any applicable town ordinance which are called into question…, grant a variance…[, and] hear and determine all appeals by any person directly or indirectly affected by any decision, action or failure to act with respect to any license, permit variance or other required approval … rendered by the Code Enforcement Officer or the Planning Board…."

2005 ME 22, ¶ 11, 868 A.2d 161. Defendant argues that *Gensheimer* does not apply because it was decided before the Legislature amended 30-A M.R.S. § 2691(3)(C) in 2017 to state that a board should default to a review *de novo*. Plaintiffs also, however, cite to the 2021 decision, *Lamarre v. Town of China*, in which the Law Court concluded that the following ordinance language provided for appellate review: "The Board of Appeals may reverse the determination of the Planning Board of the Code Enforcement Officer if it determines that either: a. Any finding of fact is unsupported by substantial evidence and/or; b. Any conclusion of law is clearly erroneous." 2021 ME 45, ¶ 5, 259 A.3d 764.

*Lamarre* and *Gensheimer* do not control this case. The Law Court subsequently decided *Zappia v. Town of Old Orchard Beach*, 2022 ME 15, ¶¶ 6-8, 271 A.3d 753. In *Zappia*, the Court decided a board should conduct a *de novo* review where an ordinance granted it "the power and duty to hear and decide appeals where it is alleged there is an error in any order, decision or determination made by the [CEO] in writing" and where the board may "affirm or reverse in whole or in part or may modify the [CEO's] order, decision or determination." 2022 ME 15, ¶ 6, 271 A.3d 753. Appellate review is required where the ordinance limits the board's review to whether the decision appealed "was erroneous as a matter of law or was not supported by substantial evidence in the record, thereby implicitly precluding the board from taking additional evidence or adopting its own findings of fact." 2022 ME 15, ¶ 7, 271 A.3d 753.

9

Defendant's ordinance Chapter 402.9.2(B)(1) directs the ZBA to perform appellate functions, such as to consider whether the Code Enforcement Officer made an error and to modify or reverse the CEO's decision. *See also Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 13, 763 A.2d 1168 (same ordinance language as Defendant); *Adams v. Town of Brunswick*, 2010 ME 7, ¶ 7, 987 A.2d 502 (same). Defendant's ordinance also explicitly allows the Board to receive evidence. R. 122. Chapter 402.9.2(C)(9), "Appeal Procedure," authorizes the ZBA to "receive any oral or documentary evidence" and provides that "[a]ll parties shall have the right to present their case of defense by oral or documentary evidence, to submit rebuttal evidence and to conduct cross-examination as may be required for a full and true disclosure of the fact." R. 122-123. This ordinance language clearly authorizes factfinding.[2] In this case, the ZBA's written decision provides that the ZBA conducted a *de novo* review. R. 116. The ZBA's decision is the operative decision for review.

2.     Plaintiffs' Right to Procedural Due Process.

Plaintiffs argue that defendant violated plaintiffs' procedural due process rights by denying them the right to be heard on the issue of whether the site plan requires plaintiffs to have a license pursuant to 30-A M.R.S § 3753. Defendant argues first that plaintiffs have waived their due process argument on appeal because their argument on the issue was limited to a few sentences in the record. Plaintiffs claim their statement was sufficient to preserve the issue for review. R. 055-056.

Claims not raised before the ZBA are not preserved for consideration by the court. *Tarason*

---

[2] Although the ordinance specifies that some instructions pertain to administrative appeals and and some to variance appeals, the language about receiving evidence covers both types of appeal. *Compare* Chapter 402.9.2(C)(9) (quoted above), *with* Chapter 402.9.2(C)(2) ("In appeals involving variances ..."), *and* 402.9.2(B)(2) ("Variance Appeals"). *But see* Chapter 402.9.2(C)(1) ("In all cases...") and (C)(7) ("At any hearing..."). The relevant language regarding receiving evidence does not specify that it applies to one type of hearing or that it applies to both.

10

*v. Town of S. Berwick*, 2005 ME 30, ¶ 8, 868 A.2d 230. A party has preserved an issue for appeal where "there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue." *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5, 771 A.2d 371 (quoting *Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347). Plaintiffs' attorney's statement at the appeal hearing that the requirement for a license was not properly noticed in the NOV is sufficient to preserve their argument that procedural due process was violated by stating inaccurately in the NOV that the license requirement came from the consent agreement. R. 055. The attorney's questioning in the hearing further illuminated this due process argument when he questioned plaintiff Randall Copp:

> [PLAINTIFFS' ATTORNEY: ] What are the business licenses that you're currently operating under?
> RANDALL COPP: We have an equipment dealer's license and a used car dealer's license.
>
> ....
>
> What you have to do to obtain a vehicle license to sell heavy equipment or vehicles is to get a license from the State. You have to go to the municipality to get the code enforcement officer to sign off, and that's part of the packet that you submit to the State of Maine, and then they come down and do inspections and what they had to do, and then they grant you your license.
> I came in and sat down with the code enforcement officer. And they looked at the site plan. We told them what we were going to do. I asked what we needed for permits and licenses. And they said you need an equipment dealer's license, and you need a used car dealer's license.
>
> ....
>
> MR. PROSS: At any time, meaning any of those code enforcement officers, did anybody indicate to you since the approval of the site plan since the consent agreement that you needed to get a recycler's license?
> RANDALL COPP: No.
> MR. PROSS: Have you ever received a Notice of Violation specifically saying that you were in violation of state law or the local ordinance requiring you to have a license?
> RANDALL COPP: No.
> MR. PROSS: Just this Notice of Violation pointing to the consent agreement?
> RANDALL COPP: That's correct, yes. Let me just say that we have not had – that nobody from the Town, any code enforcement officer or anybody, has said you need to get an automobile – or automobile – whatever – recycler's license. If we knew we were required to get it, we would have got it.

11

R. 047-048.

In addition, the record reflects that the ZBA was aware of the notice issue. The Board stated that not having a recycler's license was "a violation of the site plan not the consent agreement" and that the NOV was "written up incorrectly because they reference the consent agreement." R. 062. The Board then made and passed a motion "that this violation was written incorrectly, that [not having the license] does not violate the consent agreement, but it does violate the site plan that the applicant did not obtain and maintain a recycling license ... in Note 11 of the site plan." R. 062. This issue was identified multiple times in the record and has been adequately preserved for appeal.

"The due process clauses of the Maine and federal Constitutions guarantee due process before the state deprives a citizen of a property right." *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 13, 728 A.2d 1268. The Law Court has described "the essence of due process as notice and an opportunity to be heard." *Bd. of Registration in Med. v. Fiorica*, 488 A.2d 1371, 1375 (Me. 1985). "The notice and opportunity for a hearing 'must be granted at a meaningful time and in a meaningful manner.'" *Kirkpatrick*, 1999 ME 73, ¶ 15, 728 A.2d 1268 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Law Court requires a showing of prejudice for a party to prevail on a due process claim based on defective notice. *Hopkins v. Dep't of Hum. Servs.*, 2002 ME 129, ¶ 13, 802 A.2d 999 (affirming and finding no prejudice where the Department failed to comply with its own regulations regarding notice); *Knoblach v. Morris*, 2017 ME 116, ¶ 3, 164 A.3d 132 (per curiam) (characterizing *Hopkins* as having held that prejudice is required to prove defective notice violated due process). When the adequacy of notice is challenged, the operative inquiry is whether the notice was reasonably calculated to notify the defendant of the action. *Gaeth v. Deacon*, 2009 ME 9, ¶ 23, 964 A.2d 621. "Receipt of actual notice is not constitutionally

12

mandated, but an adequate attempt at actual notice is required." *Id.* ¶ 21 (citing *Dusenbery v. United States*, 534 U.S. 161, 169-170 (2002)).

Plaintiffs claim that the NOV notified them that the CEO found them in violation of a licensing requirement in the consent agreement but the consent agreement contained no such requirement. Plaintiffs argue that they were prejudiced by the mistake in the NOV because they did not have notice from the CEO or ZBA of the correct basis for the licensing violation until after the hearing, when the Board passed its motion modifying the CEO's grounds for the licensing violation after the close of evidence. Although the CEO clearly made a mistake by stating that the licensing violation flowed from the wrong document, the NOV stated that plaintiffs were in violation of both the consent agreement and the site plan. In addition, plaintiffs were put on notice that the site plan could be a basis for the violation at the beginning of the hearing. Before plaintiffs presented their case, Attorney Burns, attorney for defendant, questioned CEO Scott Dvorak:

> MS. BURNS: Now, was there also a note on the site plan about the licensing requirement?
> MR. DVORAK: There was, yes. No. 11 refers to the --well 30A which is the state statute requiring – requiring them to be licensed.
> MS. BURNS: So when you said the consent order, the consent order doesn't actually say that the license is required. But it did require a site plan, and the site plan references, first of all, the recycling business; and then – then a note on the plan references the statutory requirements for a license.
> MR. DVORAK: Correct.

R. 033. If plaintiffs were not previously on notice that defendant was arguing that the license requirement actually flowed from the site plan, this exchange sufficiently notified them of that argument, and plaintiffs had the opportunity to present an argument that the site plan did not require a license. Notice was sufficient to satisfy procedural due process.

3. The Board Erred in Finding the Site Plan Required Plaintiffs to Obtain a License and in Finding Plaintiffs Violated a Licensing Requirement in the Site Plan.

Plaintiffs argue that nothing in the plain language of note 11 in the site plan requires them

13

to obtain a license. Defendant responds that note 11 requires plaintiffs to obtain a license and that regardless of note 11, plaintiffs must obtain a license.

The language of the site plan does not contain a licensing requirement. Note 11 in the site plan states the definition of a recycling business, which under 30-A M.R.S. § 3752 requires a license. The note does not state that the property meets that definition and the ZBA made no finding about whether plaintiffs met the definition. The eleven other notes on the site plan are statements about the property, not requirements.[3] A separate letter in the record lists the conditions of the site plan, and that letter does not mention licensing. R. 006. Whether plaintiffs are required to obtain a recycling license depends on whether the governing statutes require them to obtain the license, and perhaps also on the effect of the consent agreement, but not on note 11 in the site plan.

The court finds no precedent for interpretation of a site plan. Because the site plan does not contain a licensing requirement, either as a matter of law or because the ZBA's finding is not supported by the substantial evidence, the ZBA erred in determining the site plan did contain that requirement.

Plaintiffs argue additionally that collateral estoppel and the terms of the consent agreement prevent defendant from prosecuting the violation. Plaintiffs' argument regarding prosecution is better considered in the context of the stayed claims, in which plaintiffs argue that the consent agreement's paragraph J prohibits defendant from prosecuting plaintiffs for not having a license and that defendant breached the consent agreement by issuing the notice of violation.

4. The ZBA's Finding That Parking Certain Vehicles in the Parking Spaces Depicted in the Site Plan Was a Violation of the Site Plan is Not Reviewable Without Additional Factfinding.

The ZBA found that plaintiffs' parking spaces were filled with "semi-tractors, a concrete

---

[3] The other notes provide, for example, the owner of the property, the tax map lot number, that the site is not in a flood zone or sand and gravel aquifer, and that the property is in a commercial zone.

14

form truck, and busses in violation of the Site Plan." R. 117. Plaintiffs argue that there are no specifications in the site plan regarding the vehicles that may be parked in the parking spaces. The parties agree that the site plan depicts the referenced parking spaces and that they are marked as 9' x 20'. R. 008. The parties disagree whether the 20' size of the parking space limits to 20' in length the vehicles that can be parked there and whether plaintiffs can park their retail vehicles in those parking spots.

Other than a column of large rectangular shapes labelled "construction equipment display" in an adjacent area of the site plan, nothing in the site plan indicates that the parking spaces are for customers or are not to be filled with retail vehicles. R. 008. The ordinance provides that the parking spaces are contemplated for employees and customers. R. 150. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 9, 946 A.2d 408 (quoting *Gerald v. York*, 589 A.2d 1272, 1274 (Me. 1991)). Chapter 402.10.11(B)(9)(c)(iii) states parking requirements do not apply to vehicles in storage for repair or sale but do apply to "all other cars on the property (e.g. customers and employees)." R. 151. Parking requirements in the ordinance set out the number of required spots based on the type of operation and its size. R. 151-52. There is no argument or evidence that the parking spaces in the site plan do not conform to the ordinance standards. Based on the record, it appears that the parking spaces are not intended for retail vehicles.

Plaintiffs argue correctly that overhang from a parking space is not a violation of the site plan. Defendant argues that because the Planning Board Standard of Approval Number One applied to the approval process, "the project shall be constructed and maintained in accordance with the plans, textural submissions and testimony presented to the Planning Board by the

15

applicant and its representatives." R. 036. The quotation defendant provides is from the testimony of Doug Webster, the community development director, who noted the standard was specified "subsequent" to 2005. R. 36. The standard is not provided in the ordinances in the record, and it is not a finding of the Board. The record does not contain information from the approval process about the vehicles to be parked in those spaces.

Plaintiffs point to Chapter 402.10.11(B)(7)(f), from the Site Development Standards for Site Plan Review, which contemplates restriction on overhang of vehicles parked in parking spots "when it might restrict traffic flow on adjacent through roads, restrict pedestrian or bicycle movement on adjacent walkways or damage landscape materials." R. 148. This ordinance language represents "minimum requirements for approval" of a site plan application, which does not speak directly to the requirements of the site plan. R. 143 (quoting 410.10.11). This language implies an expectation that parked vehicles may at times overhang from parking spaces. Considering the approved site plan in the context of the ordinance governing its approval, the mere overhang of vehicles without other impacts is unlikely to be a violation of the site plan. The Board did not make any findings regarding the impacts of the overhang.

Where vehicle overhang may interfere with traffic, as defendant argues occurs here, a violation of the site plan development standards may lie. A violation of the site plan development standards is likely a violation of the site plan itself because the Planning Board is directed to approve all site plans unless it determines that an applicant has not met the standards. This interpretation is in harmony with Chapter 402.10.17(E)-(F), which contemplates changes to or variations from site plans. A "minor change[] in approved plans necessary to address field conditions may be approved by the Code Enforcement Officer provided that any such change does not affect compliance with the standards or alter the essential nature of the proposal." R. 167

16

(quoting 402.10.17(E)). Review by the Planning Board or Staff Review Committee is required for changes that are not "minor changes that do not affect the approval standards." R. 167 (quoting 402.10.17(F)).

In this case, the Board's only finding on the issue is that "the parking spaces located on Route 100 were filled with semi-tractors, a concrete form truck and busses in violation of the site plan." R. 117. Evidence was presented suggesting these vehicles were significantly longer than the parking spaces, that the parking spaces were actually meant for customers, and that the vehicles in the spaces interfered with traffic. R. 29, 52-53, 101. Because it is unclear upon which grounds the Board based its finding of violation, further findings of fact are required regarding the Board's decision that parking semi-tractors, a concrete form truck, and buses violated the site plan. The site plan does not restrict plaintiffs from parking vehicles longer than 20 feet in the parking spaces along Portland Road, as long as doing so does not result in a violation of the Town Code.

5. The ZBA Did Not Err When It Determined Plaintiffs Had Expanded the Salvage Yard in Violation of the Site Plan.

Plaintiffs argue that the Board erred when it determined that "there was an expansion of the recycling business beyond the limits allowed on the Site Plan on the southerly side of the Property including school buses, tractor trailers and a new road leading to a new and larger opening." R. 117. Specifically, plaintiffs claim the Board's conclusion was not based on competent evidence and was arbitrary and capricious.

In making its finding, the Board relied on the site plan and a timeline of Google Earth images on which the CEO had drawn the approximate boundaries of the site plan. R. 5-9, 14-15, 19-21, 42, 75-76. Defendant argues that the CEO used the tree line in a 2007 Google Earth image of the property to approximate the edge of the salvage yard in the site plan. By projecting his markings onto each subsequent Google Earth photograph of the property, he could identify growth

17

of the salvage yard.

This evidence may not be admissible pursuant to the rules of evidence in court, but the rules of evidence do not apply in the municipal appeals setting. *See* M.R. Evid. 101(a). The marked-up photographic sequence supports the Board's conclusion that the salvage yard has expanded and a road been formed. The Board did not err in making this finding, and it was not arbitrary and capricious in relying on the Google Earth sequence.

Conclusion

The Board erred as a matter of law when it found that the site plan required a recycler's license. The Board did not make sufficient findings to allow review of whether the Board erred in finding that the vehicles parked in the parking spaces violated the consent agreement. The Board did not err when it found the plaintiffs had expanded the salvage yard without approval.

This case is remanded to defendant's Zoning Board for further proceedings consistent with this decision.

The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).

Date: June 7, 2023

Nancy Mills
Active Retired Judge

18